COMMONWEALTH *vs.* DERREL G. MILLICAN.

Suffolk. April 2, 2007. - June 8, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Homicide. Motor Vehicle,* Homicide. *Statute,* Construction. *Practice, Criminal,* Continuance without a finding, Dismissal. *Words,* "Section," "Subsection."

The plain meaning of G. L. c. 90, § 24G (*a*), the felony vehicular homicide statute, which states that prosecutions commenced under "this section" shall not be continued without a finding, prohibits such a disposition for all prosecutions under G. L. c. 90, § 24G, including those for misdemeanor vehicular homicide under G. L. c. 90, § 24G (*b*) [300-303]; moreover, such an interpretation does not produce an absurd or unworkable result [303-305] and is supported by the legislative history of § 24G [305-307].

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 7, 2005.

The case was reported by *Spina,* J.

*Jonathan C. Rutley,* Assistant District Attorney, for the Commonwealth.

*Steven J. Rappaport* for the defendant.

SPINA, J. The defendant admitted facts sufficient to warrant a guilty finding on a complaint alleging negligent operation of a motor vehicle causing the death of another (misdemeanor vehicular homicide). See G. L. c. 90, § 24G (*b*). Over the Commonwealth's objection, a judge in the District Court continued the case without a finding. The Commonwealth filed a petition for relief under G. L. c. 211, § 3, alleging that the particular disposition of this case is expressly precluded by § 24G (*a*). A single justice reserved and reported the case, without decision. We hold that a judge is without authority to continue without a finding a case of misdemeanor vehicular homicide, and order that the disposition be vacated and the case restored to the trial list.[1]

---

[1]The defendant's admission to facts sufficient to warrant a guilty finding was conditioned on a disposition of a continuance without a finding of guilt.

1. *The statute.* General Laws c. 90, § 24G (*b*), defines the crime of misdemeanor vehicular homicide as (1) the operation of a motor vehicle, (2) in certain places, (3) either (a) with a percentage, by weight, of blood alcohol of 0.08 or greater, *or* (b) while under the influence of intoxicating liquor or certain drugs, substances, or vapors, *or* (c) recklessly or negligently so that the lives or safety of the public might be endangered, and (4) by such operation causes the death of another person. Until alternate element (3) (*a*) was inserted by St. 2003, c. 28, § 22, misdemeanor vehicular homicide had remained essentially unchanged since it was first enacted, see St. 1976, c. 227. See St. 1982, c. 373, § 9; St. 1982, c. 376, § 2.

General Laws c. 90, § 24G (*a*), inserted by St. 1982, c. 373, § 9, and amended by St. 1982, c. 376, § 1, defines the crime of felony vehicular homicide as (1) the operation of a motor vehicle, (2) in certain places, (3) either (a) with a percentage, by weight, of blood alcohol of 0.08 or greater,[2] *or* (b) while under the influence of intoxicating liquor or certain drugs, substances, or vapors, *and* (4) recklessly or negligently so that the lives or safety of the public might be endangered, and (5) by such operation causes the death of another person. Felony vehicular homicide is among those felonies specifically included in the jurisdiction of the District Courts. See G. L. c. 218, § 26.

Unlike § 24G (*b*), § 24G (*a*) contains express limitations on disposition, as follows:

> "The sentence imposed upon such person shall not be reduced to less than one year, nor suspended, nor shall any person convicted under *this subsection* be eligible for probation, parole, or furlough or receive any deduction from his sentence until such person has served at least one year of such sentence; provided, however, that the commissioner of correction may, on the recommendation of the warden, superintendent, or other person in charge of a correctional institution, or the administrator of a county correctional institution, grant to an offender committed under this subsection a temporary release in the custody of

See Mass. R. Crim. P. 12 (c) (2) (B), as appearing in 442 Mass. 1511 (2004). Because we order that the disposition must be vacated, the defendant is entitled to have his case restored to the trial list.

[2]This alternative element of the offense was added by St. 2003, c. 28, § 21.

an officer of such institution for the following purposes only: to attend the funeral of a relative; to visit a critically ill relative; to obtain emergency medical or psychiatric services unavailable at said institution; or to engage in employment pursuant to a work release program. Prosecutions commenced under *this section* shall neither be continued without a finding nor placed on file.

"The provisions of section eighty-seven of chapter two hundred and seventy-six, shall not apply to any person charged with a violation of *this subsection.*" (Emphases added).

The sole question presented is whether the sentence in G. L. c. 90, § 24G (*a*), that precludes disposition by continuance without a finding also applies to misdemeanor vehicular homicide under § 24G (*b*).

2. *Discussion.* The Commonwealth argues that the plain language of the statute prohibits a continuance without a finding for both felony and misdemeanor vehicular homicide under § 24G. The defendant contends that the statutory language is ambiguous, and therefore we may look to the legislative history of § 24G to resolve the ambiguity. He argues that the legislative history supports the view that the Legislature did not intend to prohibit a continuance without a finding in cases of misdemeanor vehicular homicide.

"The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934), citing *Commonwealth* v. *S.S. Kresge Co.*, 267 Mass. 145, 148 (1929). "None of the words of a statute is to be regarded as superfluous." *Commonwealth* v. *Woods Hole, Martha's Vineyard and Nantucket S.S. Auth.*, 352 Mass. 617, 618 (1967), quoting *Bolster* v. *Commissioner of Corps. & Taxation*, 319 Mass. 81, 84-85 (1946). The language of the statute is the primary source of insight into the intent of the Legislature. *Commonwealth* v. *Gove*, 366 Mass. 351, 354 (1974). Ordinarily, we do not look

to extrinsic sources to vary the plain meaning of a clear, un-ambiguous statute unless a literal construction would yield an absurd or unworkable result. *Department of Community Affairs* v. *Massachusetts State College Bldg. Auth.*, 378 Mass. 418, 427 (1979).

a. *Plain meaning.* The words "section" and "subsection," both used in subsection (*a*) of § 24G, are different words with differ-ent meaning. See generally *Champigny* v. *Commonwealth*, 422 Mass. 249, 252-253 (1996). Webster's Third New Int'l Dictionary 2052 (1993), defines "section" as "a distinct part or portion of a writing: as a: a subdivision of a chapter (as a paragraph or a series of paragraphs not separated by a heading), b: a division of a law, statute, or legislative act." It defines "subsection" as "a subdivision or a subordinate division of a section." *Id.* at 2278. Where they are used in the same subsection, i.e., § 24G (*a*), they cannot be used interchangeably, but must be construed in relation to one another.[3] Indeed, in a related statute, the Legislature has referred to "*subsection (a) or (b) of section 24G*" (emphasis added). See G. L. c. 90, § 24 (1) (*a*) (1).

Applying the ordinary meanings to the words "subsection" and "section" as they appear in § 24G (*a*), the words "this subsection" mean subsection (*a*) of § 24G, and the words "this section" must mean something different. They reasonably can only mean § 24G of G. L. c. 90 in its entirety, the statutory sec-tion of which subsection (*a*) is a part. Thus, persons convicted under subsection (*a*) of § 24G, but not subsection (*b*) of § 24G, are not eligible for probation, parole, furlough (with certain bereavement and medical exceptions), or work release until they shall have served at least one year of their sentence. In ad-dition, persons convicted under § 24G (*a*) may not be sentenced to less than one year, nor may their sentence be suspended; and they may not receive a disposition of pretrial probation without a change of plea (see G. L. c. 276, § 87) that leads to dismissal.[4]

---

[3]There is no claim that the words "this section," as they appear in G. L. c. 90, § 24G (*a*), were inserted erroneously. When subsections (*a*) and (*b*) of § 24G were enacted by St. 1982, c. 373, § 9, there were omissions and errors that were corrected within four days by St. 1982, c. 376, §§ 1, 2. The words "this subsection" and "this section" were not among the words and omissions corrected.

[4]While these dispositions are not available to persons convicted under

By contrast, the prohibition against "continu[ances] without a finding" and the placement of cases "on file" is not limited to *subsection* (*a*), but applies to prosecutions under *section* 24G, that is, to prosecutions commenced under both subsection (*a*) *and* subsection (*b*) of § 24G.

There is no merit to the defendant's claim that the words in question are plausibly ambiguous. Although there is no prohibition in § 24G (*b*) against continuances without a finding or placing a case on file, the sentence in § 24G (*a*) on which we focus our attention prohibits such dispositions for all prosecutions under § 24G, which would include prosecutions for misdemeanor vehicular homicide under § 24G (*b*).

The defendant's reliance on one appellate decision, two memoranda of a former Chief Justice of the District Court Department, and two practice guides in support of his argument that, because reasonably well-informed persons have understood § 24G to permit a continuance without a finding in cases of misdemeanor vehicular homicide it must be ambiguous, is misplaced. *Commonwealth* v. *Angelo Todesca Corp.*, 446 Mass. 128, 132 (2006), the decision on which the defendant relies, did not present the issue now before us.

The memoranda of a former Chief Justice of the District Court Department were issued twenty-one years apart, and in the more recent memorandum, dated December 11, 2003, the Chief Justice concluded that his earlier memorandum, which took the view that a continuance without a finding is a disposition permitted under § 24G (*b*), was erroneous. We do not view these memoranda as simultaneously inconsistent interpretations that suggest ambiguity, but rather an instance where one person, whose determination on the matter is not precedential, concluded that his earlier views on the subject were erroneous. "An incorrect interpretation of a statute . . . is not entitled to deference," *Kszepka's Case*, 408 Mass. 843, 847 (1990), and we agree with the former Chief Justice that his earlier memorandum is erroneous.

Although the practice guides cited by the defendant could be construed by their silence on the subject to suggest that a continu-

§ 24G (*a*), they are available to persons under § 24G (*b*), because the limitations apply only to convictions under "subsection" (*a*) of § 24G.

ance without a finding is permitted by § 24G (*b*), we hesitate to construe them in that manner. They are surveys, with a broad scope of materials that are not intended to be definitive works on every conceivable issue in their reach. See R.M. Kantrowitz & T.E. Maguire, Massachusetts Criminal Law at 701 (Mass. Continuing Legal Educ. 2007); W.W. Teahan, Jr., Massachusetts Motor Vehicle Offenses: Criminal, Civil and Registry Practice § 3.15.2 (Mass. Continuing Legal Educ. 1994 & Supp. 1996). In any event, they are not binding on us.

Finally, the defendant cites the early versions of G. L. c. 269, § 10 (*a*), as appearing in St. 1974, c. 649, § 2, which contain a similar limitation against continuances without a finding and placing cases on file, but which he contends use the word "section" to denote subsection (*a*) of § 10. A 1990 amendment substituted the word "subsection" for "section" in § 10 (*a*). St. 1990, c. 511, § 2. We need not engage in an analysis of the pre-1990 versions of that statute because they present an entirely different problem of statutory interpretation. It is the interplay, or context, in which the Legislature has used the words "section" and "subsection" in § 24G (*a*) that determines the result in this case. Subsection (*a*) of § 24G uses both words, "section" and "subsection," in the same statutory subsection, thereby implying different meanings, as we have discussed. The Legislature did not use both words in the early versions of subsection (*a*) of G. L. c. 269, § 10. The context of the two statutes is significantly different.

The defendant has cited no persuasive authority in support of his assertion that the statute is ambiguous. We conclude that there is no ambiguity in the words "this section" or "this subsection," or in the interplay between them, as they appear in § 24G (*a*). The context created by § 24G (*a*) requires that they be interpreted as having different meanings. We further conclude that, in the context of § 24G, the plain meaning of the sentence, "Prosecutions commenced under this section shall neither be continued without a finding nor placed on file," appearing in § 24G (*a*), refers to all prosecutions commenced under § 24G, including those commenced under § 24G (*b*).

b. *Resulting interpretation.* The defendant argues that a literal interpretation of the words "this section" as they appear in

§ 24G (*a*) produces an absurd or unworkable result. In particular, he contends that although such an interpretation would prevent an offender from receiving a continuance without a finding under § 24G (*b*), he could obtain his desired result if the Commonwealth agrees to pretrial probation without a change of plea under the provisions of G. L. c. 276, § 87, together with a dismissal of the charge on successful completion of the terms of pretrial probation. We see nothing absurd or unworkable about such a result.[5] It is precisely the result we discussed in *Commonwealth* v. *Tim T.*, 437 Mass. 592, 595 n.2 (2002) ("prosecution [under G. L. c. 265, §§ 13B and 23] . . . shall not be placed on file or continued without a finding"). Moreover, and contrary to the defendant's suggestion, the statute is not rendered unworkable by the possibility that the Commonwealth might be faced with prosecuting a stale case if a defendant placed on pretrial probation without a change of plea in anticipation of dismissal fails to complete satisfactorily the terms of his probation. It simply means that the Commonwealth will need to be selective about those for whom it agrees to propose a disposition involving pretrial probation without a change of plea in anticipation of dismissal.

Contrary to the defendant's assertion, a literal interpretation of § 24G (*a*) is not in conflict with our decision in *Commonwealth* v. *Sebastian S.*, 444 Mass. 306 (2005), and the Commonwealth has not argued inconsistent positions. In that case we noted that, although the anticipated end result, i.e., dismissal of the complaint after a continuance without a finding, may appear to be the same as placing a defendant on pretrial probation without a change of plea under G. L. c. 276, § 87, with an anticipated result of dismissal after satisfactory completion of the terms of probation, the result is obtained in very different ways. A continuance without a finding requires either a plea of guilty or an admission to sufficient facts to warrant a finding of guilty, and it does not require the consent of the Commonwealth. *Id.* at 310. A dismissal after successful completion of pretrial probation without a change of plea under G. L. c. 276, § 87, *id.*, does not require a plea of guilty or an admission to sufficient facts to warrant a finding of

---

[5]Such a result is not available in prosecutions under G. L. c. 90, § 24G (*a*), where the provisions of G. L. c. 276, § 87, are expressly made inapplicable.

guilty, but it does require the consent of the Commonwealth. See *Commonwealth* v. *Tim T., supra* at 597. The Legislature has broad power and discretion to prescribe penalties for criminal behavior, see *Commonwealth* v. *Jackson,* 369 Mass. 904, 909 (1976), and its decision to limit the manner in which these crimes may be dismissed clearly falls within that power.

Indeed, the defendant's interpretation would lead to an absurd result. The "drunk driving" statute, G. L. c. 90, § 24 (1) (*a*) (1), eighth par., contains essentially the same limitation against continuances without a finding and placing a case on file as that found in § 24G (*a*), except for dispositions under § 24D (a disposition that may be available to offenders who have not been "convicted . . . or assigned to an alcohol or controlled substance education, treatment, or rehabilitation program because of a single like offense" within ten years of the current offense). Under the defendant's interpretation of § 24G (*b*), a subsequent offender who, driving while intoxicated, caused the death of another person would be eligible to have his case disposed of by a continuance without a finding. However, if the same intoxicated driver caused no injury but was merely intoxicated, he would not be eligible for a continuance without a finding under § 24 (1) (*a*) (1), eighth par.[6]

We conclude that the plain meaning of the words "this section," as they appear in § 24G (*a*), does not produce an absurd or unworkable result.

c. *Legislative history.* Although we have concluded that the words of the statute are not ambiguous, "we should not accept the literal meaning of the words of a statute without regard for that statute's purpose and history." *Sterilite Corp.* v. *Continental Cas. Co.,* 397 Mass. 837, 839 (1986). The defendant correctly notes that all amendments to G. L. c. 90, § 24G, have been legislative enactments exclusively addressed to "drunk driving," with no reference to negligent operation of a motor vehicle. The emergency preamble to St. 1982, c. 373, states that the purpose of the legislation is "to provide an immediate increase in the penalties of operating a motor vehicle while under the influence of alcoholic beverages, therefore it is hereby

---

[6]General Laws c. 90, § 24 (1) (*a*) (1), eighth par., was inserted by St. 1982, c. 373, § 2, the same legislation that enacted G. L. c. 90, § 24G (*a*).

declared to be an emergency law, necessary for the preservation of the public safety." A similar emergency preamble appears in St. 1986, c. 620, which further enhanced penalties for driving while intoxicated. Although there is no mention of negligent operation as a source of concern that produced the legislative amendments, we may not surmise that prevention of drunk driving was the only purpose behind the amendments. See *Bronstein* v. *Prudential Ins. Co.*, 390 Mass. 701, 706 (1984). Legislation is often enacted without a statement of its purpose or a revealing history. See *Commonwealth* v. *Haley*, 23 Mass. App. Ct. 10, 20 (1986). In any event, application of the same penalties to negligent operation vehicular homicide as "drunk driving" vehicular homicide is not inconsistent with the stated purposes of the amendments.

The defendant acknowledges that the original enactment of G. L. c. 90, § 24G, which created only misdemeanor vehicular homicide based on either operation of a motor vehicle while under the influence of intoxicating liquor or drugs, or negligent operation, was a legislative "middle ground between the felony of manslaughter and the misdemeanor of driving so as to endanger" or while intoxicated. *Commonwealth* v. *Jones*, 382 Mass. 387, 390-391 (1981). While concerns for "drunk driving" may have provided specific impetus for subsequent legislative amendments, there is no reason to believe the Legislature was any less concerned about highway deaths caused by criminally negligent drivers than those caused by drunk drivers. If the Legislature intended to treat negligent operation vehicular homicide differently from "drunk driving" vehicular homicide, it could have created separate provisions, as it did for operating while intoxicated and operating recklessly or negligently so that the lives or safety of the public might be endangered. Compare G. L. c. 90, § 24 (1) (*a*), with G. L. c. 90, § 24 (2) (*a*). The fact that it chose not to do so in cases producing death is well within its power and discretion, and suggests that the Legislature continues to view both prongs of misdemeanor vehicular homicide with comparable disfavor.

Finally, we would have to rewrite § 24G to accomplish what the defendant alternatively contends is the intent of the Legislature, namely, allowing cases of negligent operation vehicular homicide to be disposed of by a continuance without a finding

or being placed on file, but not allowing the same options in cases of "drunk driving" vehicular homicide. That would exceed our authority, regardless of the Legislature's intent. See *Bronstein* v. *Prudential Ins. Co.*, *supra* at 708. However, we conclude that the interpretation of § 24G (*a*) urged by the Commonwealth is not inconsistent with the legislative history of § 24G.

For the foregoing reasons, we vacate the disposition imposed in the District Court and remand the case to be restored to the list of cases to be tried.

*So ordered.*