NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11861

COMMONWEALTH  vs.  JOHN DOE.[1]



Hampshire.      September 9, 2015. - October 22, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk,
& Hines, JJ.




Sex Offender.  Global Positioning System Device.  Practice,
    Criminal, Probation, Admission to sufficient facts to
    warrant finding, Continuance without a finding.  Statute,
    Construction.




    Complaint received and sworn to in the Eastern Hampshire
Division of the District Court Department on February 1, 2013.

    A motion to modify a condition of probation was heard by
Christopher P. LoConto, J., and a question of law was reported
by him to the Appeals Court.

    The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.

_____

    [1] A pseudonym.  A judge in the District Court allowed the
defendant's motion to substitute this pseudonym for the
defendant's true name, finding good cause to do so because
"there are serious mental health considerations were the
defendant's name to be made public."  Because the Commonwealth
did not appeal this order, we do not address the propriety of
allowing a criminal defendant to be identified with a pseudonym.

Tracy A. Miner (Frederic G. Bartmon & Christina Lynn with her) for the defendant.

Cynthia M. Von Flatern, Assistant District Attorney, for the Commonwealth.

William C. Newman & K. Hayne Barnwell, for American Civil Liberties Union of Massachusetts, amicus curiae, submitted a brief.

Ryan M. Schiff, Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

GANTS, C.J.  This case is the latest in a string of cases calling on us to decide the reach of G. L. c. 265, § 47, which provides in relevant part, "Any person who is placed on probation for any offense listed within the definition of 'sex offense,' . . . as defined in [G. L. c. 6, § 178C,] shall, as a requirement of any term of probation, wear a global positioning system device . . . at all times for the length of his probation for any such offense."  Most recently, in Commonwealth v. Hanson H., 464 Mass. 807, 808 (2013), we determined that the Legislature did not intend this statute to apply to juveniles who were placed on probation after having been adjudicated delinquent.  Previously, in Commonwealth v. Raposo, 453 Mass. 739, 748 (2009), we concluded that § 47 does not apply to persons who are placed on pretrial probation.  In Raposo, we left "for a more appropriate case, and one in which the issue is briefed by the parties, whether [§ 47] applies to defendants whose cases are continued without a finding after a guilty plea or an admission to sufficient facts."  Id. at 740 n.2.  This is

that case.  We conclude that § 47 does not apply to cases that are continued without a finding, and that a judge is not required in such cases to order that a defendant wear a global positioning system device that will monitor his or her whereabouts (GPS monitoring) as a condition of probation.[2]

Background.  At approximately 1:00 A.M. on January 25, 2012, the victim and the defendant were among a group of men and women who were socializing in an apartment in Amherst.  The victim had lost her cellular telephone earlier that evening and learned that the telephone had been located and was being held for her.  The victim wished to retrieve her telephone immediately, and the defendant, who had not met the victim until that evening, offered to drive her so that she could do so.  Once they were outside, the defendant put his arm around the victim and told her she was beautiful.  The victim removed his hand from her shoulder, and told him that she had a boy friend.  He told her, "Everybody cheats," and she replied, "Not me."  The defendant asked to hold her hand and she said, "No."  He then forced his hand into her left jacket pocket and placed his hand on her hand, but he withdrew his hand from her pocket when she turned away.  The defendant then put his hands around her waist and started to kiss her neck, but she pulled away.  After they

---

[2] We acknowledge the amicus briefs submitted by the Committee for Public Counsel Services and the American Civil Liberties Union of Massachusetts.

entered his vehicle, he tugged at her scarf and started to lick her ear. She pulled away again and told him to stop. He then grabbed her left thigh, and she told him to stop and tried to pull his hand away. He later placed his hand in the area of her vagina, over her jeans. She pushed him away and told him to stop. The defendant began driving, and as the vehicle approached the street of the person who had retrieved the victim's telephone, the defendant said, "Let's go to my apartment. I have a nice bed. You'll like it." The victim told him again that she had a boy friend and wanted only to retrieve her telephone. When they arrived at the destination, the victim left the vehicle and ran to the house of the person who was holding her telephone. That person drove her home.

During the police investigation of the incident, the defendant was interviewed and admitted to most of what the victim reported, but denied touching her vaginal area. As described by the prosecutor during the plea colloquy, the defendant "basically told the police that . . . he was just trying to pick her up."

The defendant was charged in a criminal complaint with indecent assault and battery on a person over the age of fourteen, in violation of G. L. c. 265, § 13H. At the plea colloquy, the judge declared that the charge essentially was "the touching of the vagina," and asked the defendant if he

admitted to that. The defendant answered, "Yes," and the judge found sufficient facts to support a finding of guilt. The judge continued the case without a finding for a term of five years. The judge imposed several special conditions of probation, including that the defendant attend counseling twice per month and stay away from the victim and her college campus. The judge also ordered GPS monitoring of the defendant, stating that such monitoring was required under § 47 for a person placed on probation for this sex offense.

Five days later, the defendant filed a motion to remove GPS monitoring as a condition of his probation, claiming that § 47 does not impose mandatory GPS monitoring for persons who are on probation pursuant to a continuance without a finding. The judge denied the motion but reported the following question of law to the Appeals Court pursuant to Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004): "Whether the provisions of [G. L. c. 265, § 47,] appl[y] to a defendant who was placed on a [c]ontinuance [w]ithout a [f]inding for a violation of [G. L. c. 265, § 13H]."

The defendant filed a motion to stay GPS monitoring as a condition of probation while the appeal was pending. The judge held an evidentiary hearing, where he heard testimony from the defendant's treating psychologist regarding the defendant's "severe anxiety disorder" and "autism spectrum disorder," and

the "evident" harm to the defendant's psychological condition and to the psychologist's "ability to rehabilitate" the defendant caused by the GPS monitoring. The judge allowed the motion, finding that the defendant raised an issue that is worthy of presentation to an appellate court, and that the defendant presented no risk of flight or danger to the community. The judge also found that GPS monitoring of this defendant "adds nothing to public safety," because the defendant is not a sexual predator or pedophile, and the defendant has no information regarding the victim's whereabouts. He found that the defendant suffers from an anxiety disorder on the autism spectrum, and that his disorder "is in no way associated with risk to reoffend." He also found that the defendant is actively participating in treatment for this disorder, and that GPS monitoring is adversely affecting that treatment. We transferred the case from the Appeals Court on our own motion to answer the reported question.

Discussion. "The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be

effectuated." Commonwealth v. Millican, 449 Mass. 298, 300

(2007), quoting Hanlon v. Rollins, 286 Mass. 444, 447 (1934).

Because "we look first and foremost to the language of the

statute as a whole," Matter of a Grand Jury Subpoena, 447 Mass.

88, 90 (2006), we set forth the full text of § 47:

> "Any person who is placed on probation for any offense
> listed within the definition of 'sex offense', a 'sex
> offense involving a child' or a 'sexually violent offense',
> as defined in [G. L. c. 6, § 178C], shall, as a requirement
> of any term of probation, wear a global positioning system
> [GPS] device, or any comparable device, administered by the
> commissioner of probation, at all times for the length of
> his probation for any such offense.  The commissioner of
> probation, in addition to any other conditions, shall
> establish defined geographic exclusion zones including, but
> not limited to, the areas in and around the victim's
> residence, place of employment and school and other areas
> defined to minimize the probationer's contact with
> children, if applicable.  If the probationer enters an
> excluded zone, as defined by the terms of his probation,
> the probationer's location data shall be immediately
> transmitted to the police department in the municipality
> wherein the violation occurred and the commissioner of
> probation, by telephone, electronic beeper, paging device
> or other appropriate means.  If the commissioner or the
> probationer's probation officer has probable cause to
> believe that the probationer has violated this term of his
> probation, the commissioner or the probationer's probation
> officer shall arrest the probationer pursuant to [G. L.
> c. 279, § 3]. Otherwise, the commissioner shall cause a
> notice of surrender to be issued to such probationer.
>
> "The fees incurred by installing, maintaining and operating
> the [GPS] device, or comparable device, shall be paid by
> the probationer.  If an offender establishes his inability
> to pay such fees, the court may waive them."

The Commonwealth argues that the defendant was placed on

probation for a "sex offense," as defined in G. L. c. 6, § 178C,

and therefore, by the plain language of § 47, GPS monitoring

must be a term of his probation.  It contends that the use of the words "probation" and "probationer" throughout the statute means that § 47 applies to all persons placed on probation after admitting to the commission of a sex offense, regardless of whether the disposition of the sex offense is a conviction or a continuance without a finding.  But in construing a statute, we look to "all," Millican, 449 Mass. at 300, of its words; none "is to be regarded as superfluous."  Id., quoting Commonwealth v. Woods Hole, Martha's Vineyard & Nantucket S.S. Auth., 352 Mass. 617, 618 (1967).  The final sentence of the statute refers to the probationer as "an offender," which denotes that the Legislature understood that every probationer for whom § 47 applied would be "an offender."  See Raposo, 453 Mass. at 746 ("reasonable to infer that the Legislature was using the terms 'probationer' and 'offender' interchangeably in the second paragraph of § 47").

To ascertain what the Legislature meant by "an offender," we look to the entirety of the statute enacted by the Legislature on September 21, 2006, St. 2006, c. 303, entitled, "An Act increasing the statute of limitations for sexual crimes against children" (act), which added § 47 to the General Laws in the eighth of ten sections.  The term "sex offender" is used eleven times in four of the ten sections.  See St. 2006, c. 303, §§ 1, 2, 4, 6.  These sections, among other things, required

correctional authorities to transmit a sex offender's registration data to the Sex Offender Registry Board (board) within five days of receiving the sex offender after sentence, id. at § 1; required a homeless sex offender to verify registration data with the board every forty-five days, id. at § 2; provided that level two and level three sex offenders who are convicted of failing to register as required by G. L. c. 6, § 178H, be subject to community parole supervision for life, id. at § 4;[3] and prohibited level three sex offenders from residing in nursing homes. Id. at § 6.

The word "offender" is used alone in the act only three times: once in § 8, which enacted G. L. c. 265, § 47, and twice in § 1, where the word was used in provisions that required agencies who had custody of a sex offender to inform the board immediately of a transfer "so that there may be contact with the offender throughout the classification process," and that required the board to classify each sex offender at least ten days "before the offender's earliest possible release date." It is plain from § 1 of the act that, when the Legislature used the word "offender" alone, it meant "sex offender." It is equally

---

[3] In Commonwealth v. Cole, 468 Mass. 294, 308 (2014), we declared community parole supervision for life to be unconstitutional because it "constitutes an impermissible delegation to the executive branch of the core judicial function of imposing sentences, and therefore violates the mandate of art. 30 of the Massachusetts Declaration of Rights."

plain that, when the Legislature used the word "offender" in § 47 (§ 8 of the act), it also meant "sex offender," and intended the GPS monitoring mandated by § 47 to apply only to sex offenders who were placed on probation. See Burno v. Commissioner of Correction, 399 Mass. 111, 120 (1987) (where two statutes are enacted together and are related in subject matter, "it is reasonable to conclude that the Legislature intended that one meaning should be assigned to identical language in both statutes"). See generally 2B N.J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction §§ 51.1-51.3 (7th ed. 2012) (doctrine of in pari materia).

The term "sex offender" is not defined in the act, but it is defined in G. L. c. 6, § 178C, to which § 47 refers for other definitions, as a person "who has been convicted of a sex offense or who has been adjudicated as a youthful offender or as a delinquent juvenile by reason of a sex offense." (emphasis added). "An admission to sufficient facts followed by a continuance without a finding is not a 'conviction' under Massachusetts law." Commonwealth v. Villalobos, 437 Mass. 797, 802 (2002).[4] Rather, where a judge continues a case without a

---

[4] Our recent holding in Tirado v. Board of Appeal on Motor Vehicle Liab. Policies & Bonds, 472 Mass. 333, 334 (2015), that a continuance without a finding is a conviction under the statute governing the licensure of commercial drivers, G. L. c. 90F, does not disturb this long-standing principle. Our conclusion in that case was limited to the interpretation of the

finding, a guilty finding is not entered and the case is "continued without a finding to a specific date thereupon to be dismissed, such continuance conditioned upon compliance with specific terms and conditions or that the defendant be placed on probation."  G. L. c. 278, § 18.  See Commonwealth v. Mosher, 455 Mass. 811, 822 (2010) ("A continuance without a finding closely resembles a sentence of straight probation, except that the former is not a 'conviction' under State law if the defendant successfully completes the period of probation or complies with the terms and conditions set by a judge").

Although a judge may enter a guilty finding in a case continued without a finding after a defendant fails to comply with the terms of probation, a person charged with a sex offense and granted a continuance without a finding is not convicted of the sex offense unless and until there is such a guilty finding. See id.  Therefore, in the absence of a prior sex offense conviction, a defendant whose sex offense charge is continued without a finding does not fall within the definition of "sex

word "conviction" in the particular statute at issue, G. L. c. 90F.  Id. at 335.  That statute defines "conviction" far more broadly than its usual meaning under Massachusetts law to include "any determination that a person has violated or failed to comply with the law in a court of original jurisdiction." G. L. c. 90F, § 1.  The Legislature adopted this broad definition of "conviction" in order to comply with the requirements of the Federal Commercial Motor Vehicle Safety Act and remain eligible for Federal highway funds.  Tirado, supra at 335, 340.

offender" under G. L. c. 6, § 178C.  See Doe, Sex Offender Registry Bd. No. 89230 v. Sex Offender Registry Bd., 452 Mass. 764, 777 (2008).

Because a defendant charged with a sex offense and granted a continuance without a finding is not a sex offender, he or she has no obligation to register with the board and is not subject to classification by it.  See G. L. c. 6, § 178C.  See also G. L. c. 6, §§ 178D, 178L.  In Commonwealth v. Cory, 454 Mass. 559, 570 (2009), we noted that GPS monitoring "burdens liberty in two ways:  by its permanent, physical attachment to the offender, and by its continuous surveillance of the offender's activities."  We added:

> "As 'continuing, intrusive, and humiliating' as a yearly registration requirement might be, a requirement permanently to attach a GPS device seems dramatically more intrusive and burdensome.  There is no context other than punishment in which the State physically attaches an item to a person, without consent and also without consideration of individual circumstances, that must remain attached for a period of years and may not be tampered with or removed on penalty of imprisonment.  Such an imposition is a serious, affirmative restraint."  (Footnotes omitted.)

Id., quoting Doe, Sex Offender Registry Bd. No. 8725 v. Sex Offender Registry Bd., 450 Mass. 780, 792 (2008).  See Hanson H., 464 Mass. at 815 ("GPS monitoring is inherently stigmatizing, a modern-day 'scarlet letter'").  We think it unlikely that the Legislature intended to impose a restraint on liberty that is "dramatically more intrusive and burdensome"

than sex offender registration on every defendant whose sex offense case is continued without a finding, where the Legislature did not choose to subject those same defendants to sex offender registration.

The legislative history of the act supports our conclusion that the Legislature intended to mandate GPS monitoring under § 47 only for individuals convicted of sex offenses. As we discussed previously in Raposo, 453 Mass. at 746-748, and Hanson H., 464 Mass. at 812, § 47 originated in the House of Representatives. The original bill extended the statute of limitations only for certain sex offenses, and included no provisions relating to GPS monitoring. 2006 House Doc. No. 5131. See Raposo, supra at 746. On July 26, 2006, the House of Representatives adopted a substitute bill that, among other provisions, provided that any individual "convicted of a sex offense" who was classified as a level two or level three sex offender under G. L. c. 6, § 178K, was required to wear a GPS device for the duration of any court-ordered term of "post-release supervision." 2006 House Doc. No. 5234, § 7. See Raposo, supra at 747. However, the bill suffered from numerous internal inconsistencies. Among them, it imposed GPS monitoring on convicted individuals as a "condition[] of post-release supervision," a phrase that would include parolees, but the Commissioner of Probation (commissioner) was designated in the

bill to administer the GPS monitoring, although the parole board was to determine whether the "convicted individual entered a geographic exclusion zone." 2006 House Doc. No. 5234, § 7. On July 27, 2006, the Senate amended the bill and resolved these inconsistencies by splitting the GPS monitoring section into two sections: one (§ 7 of the act) that mandated GPS monitoring for any person "under court ordered parole supervision or under community parole supervision for life" for any sex offense, and another (which later became § 8 of the act) that mandated GPS monitoring for any person placed on probation for any sex offense. See 2006 Senate J. 2678-2679. See also Raposo, supra. The Senate bill was enacted without substantive changes. Id., citing St. 2006, c. 303, §§ 7-8.

"There is no evidence in the legislative history to indicate or suggest that the Senate intended by its amendments to expand the scope of the legislation beyond convicted individuals; the more reasonable conclusion to draw is the one implicit in the structure and language of the amendments themselves, namely, that the Senate was attempting to resolve the obvious jurisdictional confusion in the House version by clarifying that convicted sex offenders on probation would have their GPS devices monitored by the commissioner, and those on parole would have theirs monitored by the parole board." Raposo, 453 Mass. at 747-748. Although the term "convicted of a

sex offense" was not included in the Senate bill, § 7 of the act, governing parolees, was effectively limited to those convicted of a sex offense, because no person may be on parole or under community parole supervision for life[5] for a sex offense without having been convicted of a sex offense. A person may be on probation without having been convicted of a crime, that is, pretrial probation or probation imposed pursuant to a continuance without a finding, but there is nothing in the legislative history that suggests that the Legislature intended to expand the set of probationers subject to GPS monitoring beyond those convicted of sex offenses.

Moreover, if we had any doubt that the Legislature intended to apply the GPS monitoring requirement of § 47 only to defendants who are placed on probation upon conviction of a sex offense (and we do not), the rule of lenity requires us to give the defendant the benefit of that doubt. See  Commonwealth v. Carrion, 431 Mass. 44, 45-46 (2000), quoting Commonwealth v. Roucoulet, 413 Mass. 647, 652 (1992) ("If the statutory language 'can plausibly be found to be ambiguous,' the rule of lenity requires the defendant be given 'the benefit of the ambiguity'").  See also Hanson H., 464 Mass. at 813.

Conclusion.  For these reasons, we answer "no" to the reported question "[w]hether the provisions of [G. L. c. 265,

---

[5] See note 3, supra.

§ 47,] appl[y] to a defendant who was placed on a [c]ontinuance [w]ithout a [f]inding for a violation of [G. L. c. 265, § 13H]."[6] We therefore vacate the order imposing mandatory GPS supervision under G. L. c. 265, § 47, and remand the case to the District Court judge for further proceedings consistent with this opinion.

So ordered.

---

[6] Because we conclude that the Legislature did not intend G. L. c. 265, § 47, to apply to persons charged with sex offenses whose cases are continued without a finding, we need not reach the defendant's arguments that the statute would be unconstitutional if it did apply to these cases. See Commonwealth v. Raposo, 453 Mass. 739, 743 (2009), quoting Commonwealth v. Paasche, 391 Mass. 18, 21 (1984) ("We do not decide constitutional questions unless they must necessarily be reached"); Fleet Nat'l Bank v. Commissioner of Revenue, 448 Mass. 441, 451 n.9 (2007), quoting 1010 Memorial Drive Tenants Corp. v. Fire Chief of Cambridge, 424 Mass. 661, 663 (1997) ("issues of statutory interpretation should be resolved prior to reaching any constitutional issue").