A jury convicted the defendant of intimidation of a witness, four counts of assault and battery, and violation of an abuse prevention order.[2] On appeal the defendant argues that the evidence was insufficient to prove that he intimidated a witness, that the judge erred by not providing a "separate and distinct acts" instruction regarding the assault and battery charges, and that the evidence was insufficient to prove that he violated an abuse prevention order. We affirm.
Background. We summarize the facts, and the reasonable inferences therefrom, in the light most favorable to the Commonwealth. See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). The defendant was arrested following a physical altercation with his former girl friend, Tammy Jenkins,[3] and her friend, Cathy Arby.[4] On the day of the incident, Jenkins and her son received a ride home from Arby and discovered the defendant there cooking dinner.[5] Jenkins told the defendant to leave, but he refused and became aggressive, stating that he was "not going anywhere."
Jenkins sent her son back to Arby's car, at which point the defendant became angrier and "yell[ed] louder at [Jenkins], saying he's not going anywhere until he's ready to leave." Jenkins texted Arby asking her to come inside. Once Arby arrived, the defendant began yelling at both women and, as the argument escalated, pushed Jenkins on the shoulders with two hands. He then threw Jenkins to the ground, kicked her in the stomach and side, and, while straddling her, put his hands around her neck and choked her until she "couldn't breathe."
Arby ran at the defendant and pushed him off Jenkins. The defendant got up and threw Arby onto a dining room chair with enough force to break it. He then punched Arby in the head several times, causing her ears to bleed and breaking her earring and sunglasses. He also choked Arby with "really strong" force to the point where she "couldn't breathe at all" and "blacked out for a second." Jenkins called the police, and the defendant was taken into custody.
Jenkins later obtained an abuse prevention order against the defendant. While the order was in effect, the defendant mailed his mother a letter, asking her to give it to Jenkins.[6] The defendant's mother obliged by calling Jenkins saying that she had some movies for Jenkins's son; when Jenkins arrived to pick up the movies, however, the defendant's mother came out of the house with only the letter. In it, the defendant accused Jenkins of "put[ting] [him] in this scrud-up [sic ] predicament behind bars for something this false" and urged her to "refuse to testify in court against [him]," to "continue not showing up in court," and "to try much [sic ] as possible to avoid ... contact [with the district attorney] at all time [sic ]." Jenkins felt "overwhelmed" after reading the letter and "kind of just wanted to give up and not go through with it" because "it was scary to [her], and [she] just wanted to be over with it.
Discussion. 1. Sufficiency of evidence on witness intimidation. The witness intimidation statute, G.L.c. 268, § 13B, as amended through St. 2010, c. 256, § 120, was expanded in 2006 to prohibit " 'mislead[ing]' and 'harass[ing]' conduct, in addition to the 'threaten[ing]' and 'intimidat[ing]' conduct that the prior version of the statute had proscribed." Commonwealth v. Morse, 468 Mass. 360, 369 (2014), quoting from G.L.c. 268, § 13B(1)(c ), as appearing in St. 2006, c. 48, § 3. At issue here is the scope of the term "harass," which the statute defines as "to engage in any act directed at a specific person or persons, which act seriously alarms or annoys such person or persons and would cause a reasonable person to suffer substantial emotional distress." G.L.c. 268, § 13B(3). The judge instructed the jury in accordance with this definition and the model jury instruction. See Instruction 4.17, Massachusetts Superior Court Criminal Jury Instructions (2014). The defendant did not object or request any further instruction.
The defendant now argues that the evidence was insufficient to show that he "harassed" Jenkins because his letter did not cause her to feel fear, proof of which, he says, is required under the statutory definition. We disagree.[7] "[T]he meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, ... the sole function of the courts is to enforce it according to its terms." Commonwealth v. Soto, 476 Mass. 436, 438 (2017), quoting from Commonwealth v. Dalton, 467 Mass. 555, 557 (2014). The statutory definition of harass-encompassing conduct that "seriously alarms or annoys" the victim and would objectively cause a person "substantial emotional distress," G.L.c. 268, § 13B(3) -contains no requirement that the victim be put in fear. Although the defendant argues that the term "seriously alarms" is essentially the equivalent of "intimidates," requiring proof of "the same sense of fear," that reading would render "seriously alarms" superfluous because the statute already proscribes intimidation. See id. § 13B(1) ("Whoever, directly or indirectly, willfully ... misleads, intimidates or harasses ... a witness or potential witness ... shall be punished ..."). We will not interpret a statute in a manner that fails to give effect to all of its provisions. See Commonwealth v. Doe, 473 Mass. 76, 80 (2015).
Moreover, the term "annoys," as commonly understood, does not contain any element of fear. The defendant does not contend otherwise but claims that "annoys" requires "a persistence of behavior," not just a single act. In defining "harass," however, the Legislature referred multiple times to "act" in the singular. See G.L.c. 268, § 13B(3). We must give effect to this clear and unambiguous statutory language. See Commonwealth v. Wade, 475 Mass. 54, 61 (2016).
2. Separate and distinct acts instruction. The defendant next argues that the judge erred by failing to instruct the jury that each charged assault and battery must be a "separate and distinct act" and must not have occurred in a "single stream of conduct." Because the defendant did not raise this objection at trial, we review to determine whether any error created a substantial risk of a miscarriage of justice. See Commonwealth v. Shea, 467 Mass. 788, 790-791 (2014).
The issue of separate and distinct acts normally arises in the context of duplicative convictions of greater and lesser included offenses. See, e.g., Commonwealth v. Suero, 465 Mass. 215, 219 (2013) ; Commonwealth v. Kelly, 470 Mass. 682, 699-700 (2015). Here, the defendant was not convicted of greater and lesser included offenses, and he does not appear to argue that his assault and battery convictions are duplicative. Any such argument would fail in any event because, as the defendant acknowledges, the judge carefully instructed the jury as to which act corresponded to which indictment. These instructions eliminated any risk that the jury would return duplicative convictions. See Commonwealth v. Gouse, 461 Mass. 787, 799 (2012) (where judge "did not use the exact words 'separate and distinct act' " but made clear that one indictment was based on alleged act of punching and other was based on alleged act of kicking, "[n]o jury thus instructed could reasonably have been confused about which acts supported which charge").
Nonetheless, the defendant contends that a separate and distinct acts instruction was still necessary because, although "[t]he Commonwealth may allege however many counts it wants," it is the jury's role to decide "whether [the] acts are discrete or constitute a single stream of conduct." The defendant does not cite any case, however, supporting this proposition other than in the context of duplicative convictions. We need not resolve the issue. Even assuming that the defendant was entitled to the instruction, we are confident that the jury would have come to the same verdicts given the nature of the particular acts at issue-kicking and strangling Jenkins and punching and strangling Arby. See id. at 798-799 ("The defendant concedes, as he must, that kicking the victim with a shod foot ... constituted a separate and distinct act from punching the victim above the eye ..."); Commonwealth v. Figueroa, 471 Mass. 1020, 1022 (2015) (where judge instructed that one charge related to "the cutting of victim's face" and other charge related to "the cutting of her neck," "the resulting convictions were ... of necessity ... for separate and distinct acts" because two instances of cutting "were independent acts"). The defendant fails to demonstrate a substantial risk of a miscarriage of justice. See Commonwealth v. LeFave, 430 Mass. 169, 174 (1999) (equating substantial risk of miscarriage of justice with "serious doubt whether the result of the trial might have been different had the error not been made").
3. Sufficiency of evidence on violation of abuse prevention order. Finally, the defendant contends that his letter did not constitute a violation of the abuse prevention order because Jenkins "voluntarily went out of her way" to retrieve it from his mother's house. This argument fails on multiple grounds. First, the evidence, viewed in the light most favorable to the Commonwealth, establishes that Jenkins went to his mother's house to retrieve movies, not the letter. Second, the order barred the defendant from contacting Jenkins "even if [she] seems to allow or request contact." Jenkins's purported consent to the contact was therefore no defense to the violation. Third, the order barred both direct contact and contact made "through someone else." The defendant thus violated the plain terms of the order by sending the letter to his mother with instructions to give it to Jenkins. See Commonwealth v. Kendrick, 446 Mass. 72, 76 (2006) ("A person subject to a G.L.c. 209A 'no contact' order violates it by communicating by any means with a protected party ..."); Commonwealth v. Butler, 40 Mass. App. Ct. 906, 907 (1996) (by having florist deliver flowers to victim, defendant contacted victim "through someone else," in violation of abuse prevention order).
Judgments affirmed.

The defendant was acquitted of two counts of attempted murder and one count of assault and battery.

A pseudonym.

A pseudonym.

Jenkins testified that she and the defendant were "co-parent [ing]" her son but the defendant did not live with them.

This letter was the basis for the defendant's convictions of witness intimidation and violation of an abuse prevention order.

Whether we view the defendant's argument as a challenge to the sufficiency of the evidence or, as the Commonwealth frames it, as a challenge to the jury instruction, we would reach the same result.