COMMONWEALTH *VS.* HANSON H., a juvenile.

Hampden. December 6, 2012. - April 11, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Juvenile Court,* Delinquent child, Probation. *Sex Offender. Global Positioning System Device. Statute,* Construction.

This court concluded that mandatory global positioning system (GPS) monitoring as a condition of probation pursuant to G. L. c. 265, § 47, does not apply to juveniles who have been adjudicated delinquent and placed on probation for committing a sex offense, a sex offense involving a child, or a sexually violent offense, where, when § 47 is read in its entirety, it is not apparent that the Legislature intended to eliminate the discretion granted to Juvenile Court judges to render individualized dispositions consistent with the best interests of the child; and where such an interpretation mandating GPS monitoring would conflict with the statutory principle under G. L. c. 119, § 53, that as far as possible, juveniles are to be treated not as criminals but as children in need of aid, encouragement, and guidance. [809-817]

COMPLAINT received and sworn to in the Hampden County Division of the Juvenile Court Department on March 1, 2010.

A motion for relief from a condition of probation was heard by *Judith J. Phillips,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Ryan M. Schiff,* Committee for Public Counsel Services (*Stephanie Stolk Ormsby,* Committee for Public Counsel Services, with him) for the juvenile.

*Katherine A. Robertson,* Assistant District Attorney, for the Commonwealth.

GANTS, J. The issue presented in this case is whether a Juvenile Court judge is required under G. L. c. 265, § 47, to order a juvenile to wear a global positioning system device that will monitor his whereabouts (GPS monitoring) as a condition of probation where a juvenile is adjudicated delinquent and placed

on probation for committing a "sex offense," a "sex offense involving a child," or a "sexually violent offense," as defined in G. L. c. 6, § 178C. We conclude that, when § 47 is read in its entirety, it is not apparent that the Legislature intended to apply mandatory GPS monitoring to juveniles placed on probation as a result of having been adjudicated delinquent and thereby eliminate the discretion granted to Juvenile Court judges to render individualized dispositions consistent with the best interests of the child. We also conclude that, where the Legislature has established the statutory principle that, "as far as practicable, [juveniles] shall be treated, not as criminals, but as children in need of aid, encouragement and guidance," G. L. c. 119, § 53, we will not interpret a statute affecting the delinquency adjudications of juveniles to conflict with this principle in the absence of clear legislative intent. Here, where such clear legislative intent is absent, we conclude that a Juvenile Court judge retains the discretion, based on the totality of the circumstances, to determine whether GPS monitoring should be imposed as a condition of probation for a juvenile who is adjudicated delinquent after committing a sex offense.[1]

*Background.* The juvenile, a fifteen year old boy, was accused of rubbing his fingers over the clothing covering a female classmate's genital area in physical education class. He was arraigned in the Juvenile Court on a complaint alleging indecent assault and battery on a person under the age of fourteen, in violation of G. L. c. 265, § 13B. On July 19, 2011, he pleaded delinquent and was placed on supervised probation for a period of six months, with the conditions that he stay away from and have no contact with the victim and that he participate in counselling.[2] On the same day as the plea, the judge granted the juvenile's assented-to motion to be relieved of his duty to register

[1]Our holding is limited to juveniles placed on probation as a result of being adjudicated delinquent on a complaint. We do not address whether G. L. c. 265, § 47, applies to juveniles placed on probation after being adjudicated a youthful offender on an indictment brought under G. L. c. 119, § 54.

[2]The juvenile has now successfully completed his probation. Although his case is moot, we exercise our discretion to hear the merits of this case because the issue is of significant public interest, fully briefed by the parties, and very likely to arise again in similar circumstances, yet evade review. See *Commonwealth* v. *Cory*, 454 Mass. 559, 560 n.3 (2009), and cases cited; *Lockhart* v. *Attorney Gen.*, 390 Mass. 780, 783 (1984), and cases cited.

as a sex offender, implicitly finding that the juvenile did not "pose a risk of reoffense or danger to the public." See G. L. c. 6, § 178E (*f*). Although the juvenile was not advised during the plea colloquy that GPS monitoring would be required as a condition of probation, the judge entered an order on August 3, 2011, requiring the juvenile to wear a GPS monitoring device during the term of his probation. On August 30, 2011, the juvenile filed a motion for relief from GPS monitoring. The judge denied the motion, recognizing that GPS monitoring "certainly places a juvenile in a situation where [he] may be excluded from healthy, normal activities and rehabilitative activities," but concluding that under § 47, the judge had "no discretion to relieve the [juvenile] from the obligation of wearing a GPS." We granted the juvenile's application for direct appellate review.

*Discussion.* General Laws c. 265, § 47, provides in pertinent part:

> "Any person who is placed on probation for any offense listed within the definition of 'sex offense', a 'sex offense involving a child' or a 'sexually violent offense', as defined in section 178C of chapter 6, shall, as a requirement of any term of probation, wear a global positioning system device, or any comparable device, administered by the commissioner of probation, at all times for the length of his probation for any such offense. The commissioner of probation, in addition to any other conditions, shall establish defined geographic exclusion zones including, but not limited to, the areas in and around the victim's residence, place of employment and school and other areas defined to minimize the probationer's contact with children, if applicable. If the probationer enters an excluded zone, as defined by the terms of his probation, the probationer's location data shall be immediately transmitted to the police department in the municipality wherein the violation occurred and the commissioner of probation, by telephone, electronic beeper, paging device or other appropriate means. If the commissioner or the probationer's probation officer has probable cause to believe that the probationer has violated this term of his probation, the commissioner or the probationer's probation officer shall arrest the probationer pursuant to section 3 of chapter 279. . . ."

The Commonwealth argues that it is plain from the first sentence of § 47 that mandatory GPS monitoring applies to juveniles, because "[a]ny person" includes any juvenile, and "shall" is "understood to be a mandatory term." We agree that, in interpreting a statute, "[w]e begin with the language of the statute," *Commonwealth* v. *Raposo*, 453 Mass. 739, 743 (2009) (*Raposo*), and "[w]hen a statute is plain and unambiguous, we interpret it according to its ordinary meaning." *Id.* at 745, quoting *Commonwealth* v. *Russ R.*, 433 Mass. 515, 520 (2001). But we look to the language of the entire statute, not just a single sentence, and attempt to interpret all of its terms "harmoniously to effectuate the intent of the Legislature." *Id.* See *DiFiore* v. *American Airlines, Inc.*, 454 Mass. 486, 491 (2009) ("Where possible, we construe the various provisions of a statute in harmony with one another, recognizing that the Legislature did not intend internal contradiction"). Our goal is "to determine the intent of the Legislature in enacting the statute, 'ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.' " *Halebian* v. *Berv*, 457 Mass. 620, 628-629 (2010), quoting *Harvard Crimson, Inc.* v. *President & Fellows of Harvard College*, 445 Mass. 745, 749 (2006).

Although the language of the first sentence of § 47 suggests that the Legislature intended to include juveniles within its mandate, the language of the second and fourth sentences of the statute suggests that the Legislature understood that the probationers subject to mandatory GPS monitoring would be adults. The second sentence requires the Commissioner of Probation to establish "geographic exclusion zones" that the probationer may not enter, including "the areas in and around the victim's . . . school and other areas defined to minimize the probationer's contact with children, if applicable." It is unlikely that the Legislature intended to minimize a probationer's contact with children where the probationer himself is a child.[3] And although it may be appropriate in many instances to bar a juvenile who

---

[3]The Commonwealth contended during oral argument that the phrase "if

has committed a sexual offense from the school the victim attends even if the juvenile and the victim had been attending the same school, it is unlikely that the Legislature intended to mandate such an exclusion for all juvenile probationers adjudicated delinquent for a qualifying sex offense, especially where a juvenile may be placed on probation for engaging in an indecent touching of a child under fourteen years of age or sexual intercourse with a child under sixteen years of age that would be consensual if a child of that age were legally capable of consent. See G. L. c. 6, § 178C (including indecent assault and battery on child under fourteen years of age, in violation of G. L. c. 265, § 13B, and statutory rape of child, in violation of G. L. c. 265, § 23, within definition of "sex offense involving a child").

The fourth sentence of § 47 provides that, where a probation officer has probable cause to believe that the probationer has violated his probation by entering an excluded zone, the probation officer "shall arrest the probationer *pursuant to [G. L. c. 279, § 3]*" (emphasis added). General Laws c. 279, § 3, which provides that a probation officer may arrest a person under probation supervision without a warrant and take him before the court, applies only to adults, not to juveniles.[4] General Laws c. 119, § 59, governs a probation officer's arrest of a

applicable" was intended to exclude juveniles from this condition. The legislative history is silent on this subject, but we believe it far more likely that the Legislature recognized that the global positioning system (GPS) monitoring required by G. L. c. 265, § 47, was not limited to those who committed a sex offense against a child, and that exclusion zones intended to minimize a probationer's contact with children may be unnecessary where the victim was not a child and the adult sex offender posed no risk to children.

[4]General Laws c. 279, § 1, allows a judge to suspend the execution of a sentence of imprisonment of a "person convicted before a court," and direct that he be "placed on probation." General Laws c. 279, §§ 1 and 3, were part of the same statutory enactment in 1900, see St. 1900, c. 449, §§ 1-2, so we can infer that G. L. c. 279, § 3, addresses the consequence of a probation violation by a person placed on probation after being "convicted before a court." See *Commonwealth* v. *Connor C.*, 432 Mass. 635, 645 (2000) ("Absent some contrary indication in the statute, the same words used in different parts of a statute enacted at the same time should receive the same meaning"). Accordingly, G. L. c. 279, § 3, does not apply to juveniles because, under "our long-standing jurisprudence, . . . an 'adjudication' that a child has violated a law generally is not a 'conviction' of a crime." *Id.* at 646.

child on probation.[5] If the Legislature intended that mandatory GPS monitoring apply both to adult and juvenile probationers, one would expect that, in § 47, the Legislature would have referenced both G. L. c. 279, § 3, and G. L. c. 119, § 59, in providing for the arrest of probationers who violated the terms of their probation by entering the excluded zone.

In view of this ambiguity, we look to the legislative history of § 47 to see if it sheds light on whether the Legislature intended § 47 to apply to juvenile probationers. It does not. In early 2005, the Commonwealth initiated a program to utilize a global positioning system and electronic bracelets to monitor the movements of level three sex offenders placed on parole and probation. See St. 2004, c. 352, § 70 (providing "that $1,000,000 shall be expended for the Commissioner of Probation to implement a global positioning system in collaboration with the Massachusetts parole board utilizing tamper free ankle bracelets to track level 3 sex offenders actively on parole and sex offenders currently being supervised by the office of the commissioner of probation and deemed appropriate for said tracking by said commissioner"). See also Global Positioning to Track Sex Offenders, Boston Globe, Sept. 21, 2004, at A1; House News Service, Sept. 20, 2004. In 2006, the Legislature enacted "An Act increasing the statute of limitations for sexual crimes against children," which inserted G. L. c. 265, § 47. St. 2006, c. 303, § 8. The original version of the bill adopted by the House required GPS tracking of "[a]ny individual convicted of a sex offense . . . and classified as a level 2 or level 3 sex offender . . . at all times for the length of any post-release supervision." 2006 House Doc. No. 5234, § 7. The Senate's amendments to the bill created separate sections dealing with parolees and probationers, and expanded the act's coverage to include "[a]ny person who is placed on probation" for a sex offense. See

---

[5]General Laws c. 119, § 59, provides:

"If a child has been placed in care of a probation officer, said officer, at any time before the final disposition of the case, may arrest such child without a warrant and take him before the court, or the court may issue a warrant for his arrest. When such child is before the court, it may make any disposition of the case which it might have made before said child was placed on probation, or may continue or extend the period of probation."

*Raposo, supra* at 747; 2006 Senate J. 2678. The House concurred in the Senate's amendments. 2006 House J. 2204. We have found nothing in the legislative history that suggests that the Legislature considered whether the broader scope of the Senate's language would place juvenile probationers within its rubric.

We confronted a comparable ambiguity in § 47 in *Raposo*, where we were asked to decide whether the requirement of GPS monitoring applied to all probationers, including those placed on pretrial probation under G. L. c. 276, § 87, or only to probationers who were placed on probation after a conviction of one of the designated sex crimes. *Raposo, supra* at 740, 744-748. There, the Commonwealth argued that the first sentence of § 47 imposed the statutory mandate on "[a]ny person who is placed on probation" for a sex offense, and that the plain meaning of this unambiguous language includes those on "probation of any kind — a temporary placement pending trial, a pretrial disposition of the case, or probation ordered by a judge as part of the disposition of a case after conviction." *Id.* at 744-745. We noted that the statute spoke of "[a]ny person who is placed on probation *for any [sex] offense*" (emphasis added) and occasionally referred to the "probationer" as an "offender," and concluded that the Legislature intended the statute to be internally consistent, "and therefore intended the term 'probationer' to cover only those defendants who had been convicted and sentenced to a term of probation." *Id.* at 746.

In this case, as in *Raposo*, a literal reading of the phrase "[a]ny person who is placed on probation" would be inconsistent with other provisions of § 47 that suggest that the Legislature intended that the GPS monitoring mandate be limited to adults who were placed on probation after being convicted of a sex offense. As a general rule, where "a statute can plausibly be found to be ambiguous," the rule of lenity requires that the juvenile be given the benefit of the ambiguity. *Charles C.* v. *Commonwealth*, 415 Mass. 58, 70 (1993), quoting *Commonwealth* v. *Roucoulet*, 413 Mass. 647, 652 (1992). But we need not rely solely on the rule of lenity to conclude that the ambiguity in § 47 must be interpreted to exclude juvenile probationers from the requirement of mandatory GPS monitoring. The more compelling reason to reach this conclusion is that

interpreting the ambiguity to mandate GPS monitoring for juvenile probationers would fundamentally conflict with the long-standing statutory principle set forth in G. L. c. 119, § 53, that §§ 52-63, "shall be liberally construed so that the care, custody and discipline of the children brought before the court shall approximate as nearly as possible that which they should receive from their parents, and that, as far as practicable, they shall be treated, not as criminals, but as children in need of aid, encouragement and guidance." See *Commonwealth* v. *Matranga*, 455 Mass. 45, 51 (2009), quoting *Charland* v. *Muzi Motors, Inc.*, 417 Mass. 580, 582-583 (1994) ("a statute is to be interpreted in harmony with prior enactments to give rise to a consistent body of law").

We have recognized that, in accordance with these statutory principles, our juvenile justice system "is primarily rehabilitative, cognizant of the inherent differences between juvenile and adult offenders, and geared toward 'the correction and redemption to society of delinquent children.' " *Commonwealth* v. *Magnus M.*, 461 Mass. 459, 461 (2012), quoting *Metcalf* v. *Commonwealth*, 338 Mass. 648, 651 (1959). See R.L. Ireland, Juvenile Law § 1.3, at 18 (2d ed. 2006) ("The rationale of [the dual system for adult and juvenile offenders] is diminished culpability: deviant behavior of children may be regarded as generally less culpable than similar adult behavior for the reason that a child's capacity to be culpable . . . is not as fixed or as absolute as that of an adult"). General Laws c. 119, § 58, provides a Juvenile Court judge with the discretion necessary to carry out these redemptive principles, authorizing a judge, where a child is adjudicated delinquent, to place the case on file or "place the child in the care of a probation officer for such time and on such conditions as [the judge] deems appropriate." See *Commonwealth* v. *Magnus M.*, *supra*, quoting *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 667 (1978) (we have "empowered Juvenile Court judges with 'very broad discretion . . . with regard to disposition' "); *Commonwealth* v. *Balboni*, 419 Mass. 42, 46 (1994) ("judge has very broad discretion in the Commonwealth's effort to rehabilitate the child and to further the child's best interest"). If § 47 applied to juvenile probationers adjudicated delinquent

because of the commission of a sex offense, a Juvenile Court judge would no longer have the discretion to determine what conditions of probation would be appropriate for the juvenile, as otherwise permitted under § 58, because the condition of GPS monitoring would be mandatory, regardless of whether such monitoring was necessary to protect the victim of the sex offense or prospective victims, and regardless of the potential adverse impact the wearing of such a device may have on the juvenile's prospects for rehabilitation. As a result, the delinquent child would be treated as a criminal, not as a child in need of aid, encouragement, and guidance, as required under § 53.

The facts of this case demonstrate how the application of § 47 to juveniles could interfere with a child's rehabilitation and stigmatize the child as a criminal. "A GPS device, as implemented by the Commissioner of Probation, . . . consists of two pieces of electronic equipment: an ankle bracelet, which is permanently attached to the probationer, and a GPS-enabled cellular telephone, which communicates with the ankle bracelet and transmits the probationer's current location to the probation department." *Raposo, supra* at 740. The juvenile's mother attested, and the Commonwealth did not dispute, that, as a result of having what she described as "a large, black box" attached to the juvenile's ankle, the juvenile has become "withdrawn, anxious and depressed." He is embarrassed to see his extended family because of his shame about wearing the device, his younger sister teases him about it, and his friends ridiculed him when the unit began to "beep" in their presence. He used to participate in an after-school program where he would swim three or four times per week, but he was unable to do that because the unit cannot be submerged in water. He enjoyed playing basketball, but stopped playing because he could not hide the unit while playing and he was "extremely anxious that other kids will see it." He was "apprehensive and anxious" about starting high school because he learned that "his new school has been made aware of his situation."

We have recognized that, as currently implemented, GPS monitoring is inherently stigmatizing, a modern-day "scarlet letter."[6] *Commonwealth* v. *Cory*, 454 Mass. 559, 570 n.18

---

[6]See N. Hawthorne, The Scarlet Letter 90 (2d ed. 1871) ("Thus the young

(2009). "To the extent that the ankle bracelet portion of the GPS device is potentially visible to the public, it may have the additional punitive effect of exposing the offender to persecution or ostracism, or at least placing the offender in fear of such consequences." *Id.* We have also recognized that, in exercising the discretion bestowed on a Juvenile Court judge by § 58, the "avoidance of attaching the stigma of a criminal to the child is of great importance." *Commonwealth* v. *Balboni, supra.* See *Metcalf* v. *Commonwealth, supra.*

We are not persuaded that in enacting § 47 the Legislature intended to impose "the stigma of a criminal" on a child adjudicated delinquent because of a sex offense in the absence of an individualized determination by a Juvenile Court judge that the need for GPS monitoring to protect the safety of the victim and prospective victims overrode the damage that wearing such a device may have on the child's rehabilitation. Nor are we persuaded that the Legislature intended in § 47 to depart from the statutory principle in G. L. c. 119, § 53, that, "as far as practicable," children in the juvenile justice system "shall be treated, not as criminals, but as children in need of aid, encouragement, and guidance," or to deny Juvenile Court judges the discretion needed to implement this principle. Where the Legislature intends to depart from this statutory principle and mandate a condition of probation for a juvenile, we trust it will do so with more clarity than we find in § 47. Cf. *Riley* v. *Davis Constr. Co.,* 381 Mass. 432, 438 (1980) (statute not to be interpreted as effecting material change in common law unless intent to do so is clearly expressed).

Accordingly, we hold that mandatory GPS monitoring pursuant to § 47 does not apply to juveniles who have been adjudicated delinquent.[7] Of course, wholly apart from § 47, Juvenile Court

and pure would be taught to look at her, with the scarlet letter flaming on her breast . . . as the figure, the body, the reality of sin").

[7] Because we interpret G. L. c. 265, § 47, not to apply to juveniles who have been adjudicated delinquent, we do not reach the constitutional issues raised by the juvenile. See *1010 Memorial Drive Tenants Corp.* v. *Fire Chief of Cambridge,* 424 Mass. 661, 663 (1997) ("It is fundamental that issues of statutory interpretation should be resolved prior to reaching any constitutional issue"); *Commonwealth* v. *Paasche,* 391 Mass. 18, 21 (1984) ("We do not decide constitutional questions unless they must necessarily be reached").

judges retain the discretion, in appropriate cases, to order GPS monitoring as a condition of probation. See *Commonwealth* v. *Vallejo*, 455 Mass. 72, 89-90 (2009); *Emelio E.* v. *Commonwealth*, 453 Mass. 1024, 1025 (2009).

*Conclusion.* The judge's finding that, under § 47, she had no discretion to relieve the juvenile from the obligation of wearing a GPS monitor was error. Were the case not moot, see note 2, *supra,* we would remand the matter to the judge for a determination whether, in her discretion, GPS monitoring should be a condition of the juvenile's probation.

*Appeal dismissed.*