NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12135


COMMONWEALTH  vs.  SAMUEL S., a juvenile.



Hampden.        November 9, 2016. - February 17, 2017.

Present:  Gants, C.J., Botsford, Lenk, Hines, Gaziano, Lowy, & Budd, JJ.



Sex Offender.  Sex Offender Registration and Community Notification Act.  Youthful Offender Act.  Delinquent Child.  Global Positioning System Device.  Juvenile Court, Delinquent child, Probation.  Practice, Criminal, Juvenile delinquency proceeding, Probation.




Complaint received and sworn to in the Hampden County Division of the Juvenile Court Department on August 21, 2014.

Indictments found and returned in the Superior Court Department on October 3, 2014.

Motions for relief from conditions of probation were heard by Judith J. Phillips, J., and a motion for reconsideration was considered by her.

The Supreme Judicial Court granted an application for direct appellate review.


Laura Chrismer Edmonds for the juvenile.
Cynthia Cullen Payne, Assistant District Attorney, for the Commonwealth.

Ryan M. Schiff & Caroline Alpert, Committee for Public Counsel Services, for Youth Advocacy Division of the Committee for Public Counsel Services, amicus curiae, submitted a brief.

BOTSFORD, J.  The juvenile was adjudicated both a youthful offender and a delinquent juvenile as the result of a single sexual assault.  A Juvenile Court judge ordered the juvenile to register as a sex offender and to submit to global positioning system (GPS) monitoring, concluding that both consequences, under the relevant statutes, were mandatory.  The juvenile argues that this conclusion was error.  He argues first that the pertinent section of the sex offender registration statute, G. L. c. 6, § 178E (f), required the judge to make an individualized determination whether the juvenile must register as a sex offender because he was not "sentenced to immediate confinement" within the meaning of the statute.  He also argues that the GPS monitoring statute, G. L. c. 265, § 47, as interpreted by this court in Commonwealth v. Hanson H., 464 Mass. 807 (2013), does not require youthful offenders to submit to GPS monitoring.  We agree with the juvenile on both points.  Accordingly, we vacate the judge's decision.[1]

---

[1] We acknowledge the amicus brief of the Youth Advocacy Division of the Committee for Public Counsel Services.

Background.  1.  Facts.[2]  This case stems from a sexual assault that occurred in June, 2014.  The juvenile, who was seventeen years old at the time, was at home with the victim, his five-year-old half-sister.  The victim's father returned home and entered the living room.  There, he saw the victim being pushed to the ground and noticed that the juvenile sitting on the couch "with his drawers and his pants at his ankles."  The victim was naked from the waist down.

The juvenile initially denied any wrongdoing.  The victim later described that the juvenile had touched her genitals and chest area, made her touch his genitals, and penetrated her labia with his penis in a way that caused her pain.

2.  Prosecution, plea, and sentencing.  Two juvenile delinquency complaints issued, charging the juvenile with one count of indecent assault and battery on a child under fourteen, G. L. c. 265, § 13B, and one count of rape of a child with force, G. L. c. 265, § 22A.  Three youthful offender indictments also issued, charging the juvenile with one count of rape of a child with force, G. L. c. 265, § 22A, and two counts of aggravated rape of a child, G. L. c. 265, § 23A.

In January, 2015, all charges were resolved pursuant to a plea agreement.  The juvenile admitted to sufficient facts to

_____

[2] We accept the underlying facts, which are not in dispute, from the juvenile's plea colloquy.

warrant an adjudication as a youthful offender on the count of rape of a child with force and as a delinquent juvenile on the count of indecent assault and battery of a child. The Commonwealth filed a nolle prosequi on the remaining three charges. The judge accepted the parties' joint sentencing recommendation. Pursuant to the recommendation, the judge sentenced the juvenile on the youthful offender count to a combination sentence as described in G. L. c. 119, § 58 (b). As part of that sentence, the juvenile was committed to the Department of Youth Services (DYS). The juvenile was also committed to DYS on the juvenile delinquency count.

3. Registration and GPS monitoring. After the plea and sentencing, the juvenile filed two motions in which he sought relief from mandatory sex offender registration under G. L. c. 6, § 178E (f), and relief from mandatory GPS monitoring under G. L. c. 265, § 47, and this court's opinion in Hanson H., 464 Mass. 807. In February, 2015, the judge ruled that she had discretion to relieve the juvenile of both the registration and the GPS monitoring requirements, and ordered a risk assessment evaluation to enable her to determine whether either, or both, should apply to the juvenile. The Commonwealth moved for reconsideration, which the juvenile opposed. The judge then issued a revised decision in June, 2015, in which she reversed her position, ultimately concluding that the relevant statutes

permitted her no discretion to relieve the juvenile from sex offender registration or GPS monitoring.

4. Juvenile's appeal. The juvenile appealed from the judge's revised decision.[3] We allowed the juvenile's application for direct appellate review and transferred the case to this court.

Discussion. 1. Jurisdiction. The Commonwealth first argues that the juvenile's appeal regarding mandatory registration is not properly before the court because he has not exhausted all administrative remedies or sought relief under G. L. c. 211, § 3.[4] We agree that the juvenile has not followed the appropriate procedure to obtain review of this claim. See Commonwealth v. Ronald R., 450 Mass. 262, 266-267 (2007) (no automatic right of appeal when juvenile is denied relief from registration obligation). The appropriate procedure would have been to file a petition for relief under G. L. c. 211, § 3, in the county court. See id.

---

[3] The Juvenile Court judge stayed the juvenile's sex offender registration pending the outcome of this appeal. The judge also relieved the juvenile of the obligation to submit to global positioning system (GPS) monitoring until he was released from a DYS secure treatment facility and placed into the community.

[4] The Commonwealth does not extend its jurisdictional argument to the GPS monitoring issue, but in any event, we would allow the appeal. Cf. Commonwealth v. Lapointe, 435 Mass. 455, 458-459 (2001) (allowing direct review of conditions of probation because case had been fully briefed and presented issues of public interest).

Nonetheless, it will serve a substantial public interest to resolve the questions presented by the juvenile's appeal, these questions are likely to arise again, and the case has been fully briefed and argued before the court.  Accordingly, we will answer the questions in this.  See Hanson H., 464 Mass. at 808 n.2 (deciding merits of appeal despite mootness, when issue raised was of significant public interest, fully briefed, and very likely to arise again in similar circumstances, yet evade review).  See also Commonwealth v. Doe, 420 Mass. 142, 143 (1995), overruled on other grounds by Commonwealth v. Pon, 469 Mass. 296 (2014) (exercising discretion to comment on issues presented despite fact that report from lower court was not properly before court); Cobb v. Cobb, 406 Mass. 21, 24 n.2 (1989) (citing authority provided by G. L. c. 211, § 3, to answer improperly reported questions).

2.  Registration as a sex offender.  The first question presented is whether G. L. c. 6, § 178E (f) (§ 178E [f]),[5]

_____

[5] The full text of G. L. c. 6, § 178E (f) (§ 178E [f]), provides:

"In the case of a sex offender who has been convicted of a sex offense or adjudicated as a youthful offender or as a delinquent juvenile by reason of a sex offense, on or after December 12, 1999, and who has not been sentenced to immediate confinement, the court shall, within [fourteen] days of sentencing, determine whether the circumstances of the offense in conjunction with the offender's criminal history indicate that the sex offender does not pose a risk of reoffense or a danger to the public.  If the court so

permitted the judge discretion to relieve the juvenile of the requirement to register as a sex offender. That is a question of statutory construction subject to de novo review by this court. See Commonwealth v. Ventura, 465 Mass. 202, 208 (2013).

Section 178E (f) permits a sentencing judge, in certain sex offense cases, to conduct an individualized determination of whether the sex offender must register as such. The section contemplates three categories of sex offenders: (1) an adult who has been convicted of a sex offense, (2) a juvenile who has been adjudicated a youthful offender by reason of a sex offense, and (3) a juvenile who has been adjudicated delinquent by reason of a sex offense. Id. In any case where the sentencing judge has not sentenced such a sex offender "to immediate confinement," the judge is to determine, within fourteen days of sentencing, "whether the circumstances of the offense in conjunction with the offender's criminal history indicate that

> determines, the court shall relieve such sex offender of the obligation to register under [§§] 178C to 178P, inclusive. The court may not make such a determination or finding if the sex offender has been determined to be a sexually violent predator; has been convicted of two or more sex offenses defined as sex offenses pursuant to the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, 42 U.S.C. [§] 14071, committed on different occasions; has been convicted of a sex offense involving a child or a sexually violent offense; or if the sex offender is otherwise subject to minimum or lifetime registration requirements as determined by the board pursuant to [§] 178D." (Emphases added.)

the sex offender does not pose a risk of reoffense or a danger to the public." Id. If the judge so determines, and none of the statutory exceptions applies,[6] then the judge is to relieve the individual from the obligation to register as a sex offender. Id.

Given the language of § 178E (f), the narrow question we confront is whether the juvenile in this case, who has been committed to DYS both as a youthful offender and as a delinquent juvenile, has been "sentenced to immediate confinement" within the meaning of § 178E (f).

a. Meaning of "sentenced to immediate confinement." We begin with the plain meaning of the statutory language. See Commonwealth v. Mogelinski, 466 Mass. 627, 633 (2013), S.C., 473 Mass. 164 (2015). The terms "sentenced," "confinement," and "immediate confinement" are not defined within the sex offender registration statute. See G. L. c. 6, § 178C (definitions

---

[6] Several enumerated exceptions in § 178E (f) bar a judge from applying its relief provision. The Commonwealth does not argue for, and the record does not support, the application of any of those exceptions here. In particular, there is no indication that the juvenile has been "determined to be a sexually violent predator" or that he is "otherwise subject to minimum or lifetime registration requirements" under § 178D. See G. L. c. 6, § 178E (f), third sentence. Further, having been adjudicated a youthful offender and a delinquent juvenile, the juvenile has not been "convicted" of any of the exception-triggering offenses. See Commonwealth v. Connor C., 432 Mass. 635, 646 (2000) (reaffirming "long-standing jurisprudence that an 'adjudication' that a child has violated a law generally is not a 'conviction' of a crime").

applicable to §§ 178C to 178P).  As a result, we look to dictionary definitions as a guide to a term's plain or ordinary meaning.  See, e.g., Commonwealth v. Palmer, 464 Mass. 773, 778-779 (2013).

The term "confinement" is defined, in a legal context, to mean "[t]he act of imprisoning or restraining someone; the quality, state, or condition of being imprisoned or restrained." Black's Law Dictionary, at 362 (10th ed. 2014).  More generally, to "confine" means "to hold within bounds"; "restrain from exceeding boundaries"; "to keep in narrow quarters"; "imprison"; "to prevent free outward passage or motion of"; "secure, enclose, fasten"; or "to keep from leaving accustomed quarters (as one's room or bed) under pressure of infirmity, childbirth, detention, [or] business reasons."  Webster's Third New International Dictionary 476 (1993).

A "sentence" is "[t]he judgment that a court formally pronounces after finding a criminal defendant guilty" or "the punishment imposed on a criminal wrongdoer."  Black's Law Dictionary 1569 (10th ed. 2014).  Similarly, a "sentence" can be "a decision or judicial determination of a court or tribunal"; "the order by which a court or judge imposes punishment or penalty upon a person found guilty"; "to decree, decide, or announce judicially"; or "to prescribe the penalty or punishment of."  Webster's Third New International Dictionary 2068 (1993).

Read together, these definitions indicate that a "sentence" to "confinement" ordinarily will involve a court or judge imposing, as a consequence of or penalty for an illegal act, a form of spatial restraint within defined and obvious physical boundaries, including, as one example, incarceration.[7]

b. Dispositional options for youthful offenders and delinquent juveniles. To understand whether youthful offenders and delinquent juveniles can be "sentenced to immediate confinement" within the definitions just discussed requires an

---

[7] This definition accords with our case law interpreting the term "confinement," albeit in a different context. See Commonwealth v. Morasse, 446 Mass. 113, 121 (2006) (interpreting term "in confinement" to mean "confinement in a jail or prison, or confinement in some comparably secure and restrictive institutional setting"). It also fits comfortably with the Legislature's use of the term in several other contexts. See, e.g., G. L. c. 22C, § 37 ("[certain notification required prior to release] of any person confined in a penal or reformatory institution of the commonwealth . . . or of any person confined in any facility . . . or in the Bridgewater state hospital . . ."); G. L. c. 123A, § 14 (a) ("The person named in the [sexually dangerous person] petition shall be confined to a secure facility for the duration of the trial"); G. L. c. 126, § 5 ("If there are several jails in a county, the sheriff may cause the prisoners to be confined in any of them"); G. L. c. 127, § 129C ("For the satisfactory conduct of a prisoner confined in a prison camp, the commissioner [of the department of correction] may grant . . . a further deduction of sentence . . . for each month while confined in a prison camp"); G. L. c. 176A, § 8A (i) ("Nothing in this section shall be construed to require a non-profit hospital service corporation to pay for mental health benefits or services: which are provided to a person . . . who is presently incarcerated, confined or committed to a jail, house of correction or prison, or custodial facility in the department of youth services within the commonwealth or one of its political subdivisions"). (Emphases added.)

understanding of the range of dispositional outcomes available
in those cases.  For a youthful offender, a Juvenile Court judge
may order one of three consequences:  (1) a sentence provided by
law (i.e., an adult sentence); (2) a combination sentence (which
combines a commitment to DYS with a suspended adult sentence);
or (3) commitment to DYS until the age of twenty-one.  G. L.
c. 119, § 58, third par.  To select among these options, the
judge must conduct a sentencing recommendation hearing that
takes into account a host of case-specific factors.[8]  G. L.
c. 119, § 58, fourth par.

With respect to a delinquent juvenile, a Juvenile Court
judge also has a range of dispositional options, including (1)
commitment to DYS, (2) placement of the juvenile in the care of
a probation officer, and (3) placement of the case on file.
G. L. c. 119, § 58, second par.  The judge has broad discretion
to select among these options, although the statute does not
require the same sort of presentence hearing as it does for

---

[8] The sentencing judge is instructed to consider the
following nonexhaustive list of factors:  "the nature,
circumstances, and seriousness of the offense; victim impact
statement; a report by a probation officer concerning the
history of the youthful offender; the youthful offender's court
and delinquency records; the success or lack of success of any
past treatment or delinquency dispositions regarding the
youthful offender; the nature of services available through the
juvenile justice system; the youthful offender's age and
maturity; and the likelihood of avoiding future criminal
conduct."  G. L. c. 119, § 58, fourth par.

youthful offenders.  See R.L. Ireland, Juvenile Law § 1.62 (2d

ed. 2006); G. L. c. 119, § 58, second and fourth pars.

Two additional observations are in order with respect to

the consequences of a commitment to DYS.  First, a separate

statute describes the various ways that DYS may treat a person

committed to its custody.  See G. L. c. 120, § 6.[9]  Two of them

explicitly involve "confinement," while three of them do not.

See id.  The policies of DYS also describe a spectrum of

placement options for juveniles, ranging from nonresidential,

community-based placement to "staff secure" facilities to

"hardware secure" facilities.  Department of Youth Services,

---

[9] General Laws c. 120, § 6, provides:

"When a person has been committed to the department of youth services, it may after an objective consideration of all available information --

"(a) Permit him his liberty under supervision and upon such conditions as it believes conducive to law-abiding conduct; or --

"(b) Order his confinement under such conditions as it believes best designed for the protection of the public; or --

"(c) Order reconfinement or renewed release as often as conditions indicate to be desirable; or --

"(d) Revoke or modify any order, except an order of final discharge, as often as conditions indicate to be desirable; or --

"(e) Discharge him from control with notice to the court . . . when it is satisfied that such discharge is consistent with the protection of the public."

Official Policy No. 01.01.04(a) (eff. July 1, 2004).  See Commonwealth v. Carrion, 431 Mass. 44, 46 (2000) (discussing "wide range of facilities available for placements" of those in DYS custody).  See also United States v. Gibbons, 553 F.3d 40, 45 (1st Cir. 2009) (when Juvenile Court judge commits juvenile adjudicated delinquent to DYS custody, "DYS then determines the placement appropriate for each offender, which could range from parental release to confinement at a secure facility").  Second, once a judge commits a youthful offender or a delinquent juvenile to DYS, the actual terms of that commitment, as a general matter, are wholly within the discretion of DYS, an executive agency.[10]  See G. L. c. 120, § 6.  See also Gibbons, supra.  We have located no part of the law, and the parties have identified none, giving a judge the power to order DYS to place the juvenile in, say, a secure facility as opposed to placing him or her on supervised release, or vice versa.

c.  Whether commitment to DYS constitutes being "sentenced to immediate confinement."  We now return to the interpretive question that is at issue here:  whether a commitment to DYS

_____

[10] Adjudications of gun-related charges are treated somewhat differently.  See G. L. c. 119, § 58, seventh & eighth pars.  In these cases, the seventh and eighth paragraphs of § 58 require the sentencing judge to commit the juvenile to DYS, and then they require the DYS commissioner to detain the juvenile in a facility.  In other words, the detention results from a two-step process involving, first, commitment to DYS by the sentencing judge and, second, mandatory detention in a facility by the DYS commissioner.

constitutes being "sentenced to immediate confinement" under § 178E (f).

The juvenile argues that a commitment to DYS does not constitute being "sentenced to immediate confinement" for purposes of § 178E (f). Under this interpretation, no delinquent juvenile can be "sentenced to immediate confinement," because a commitment to DYS is the most severe sentence a delinquent juvenile can receive. See G. L. c. 119, § 58, second par. Such a reading is problematic if the inclusion of the phrase "or as a delinquent juvenile" in the first sentence of § 178E (f) indicates an understanding by the Legislature that some delinquent juveniles would be subject to immediate confinement while others would not.[11] Moreover, under G. L. c. 120, § 6, DYS is expressly authorized to order the "confinement" and "reconfinement" of those in its custody. See G. L. c. 120, § 6 (b), (c). The end result for those juveniles is a sentence that includes a period of immediate confinement.

On the other hand, the Commonwealth proposes that a commitment to DYS always constitutes "immediate confinement" for the purposes of § 178E (f). This interpretation, too, is

---

[11] The inclusion of "a youthful offender" in the first sentence of § 178E (f) does not present exactly the same issue, insofar as a youthful offender may be sentenced like an adult, G. L. c. 119, § 58, third par., and if a judge were to do so, the judge presumably could choose to sentence the youthful offender to "immediate confinement," or not.

problematic insofar as it conflicts with the plain language and structure of G. L. c. 120, § 6, which describes the power of DYS, with respect to a juvenile committed to it, to "[p]ermit [the juvenile] his liberty under supervision and upon such conditions as [DYS] believes conducive to law-abiding conduct." G. L. c. 120, § 6 (a).  In other words, the Commonwealth would have us treat even those juveniles who are, upon commitment to DYS, allowed their "liberty under supervision" as having been "sentenced to immediate confinement."  That interpretation also makes little sense insofar as it would automatically require such a juvenile to register as a sex offender even though § 178E (f) expressly directs a judge to determine in the first instance whether an adult whom a judge has sentenced to probation -- a form of "liberty under supervision" -- shall be required to register as a sex offender.  See Commonwealth v. Dalton, 467 Mass. 555, 558 (2014) ("According to the plain language of § 178E [f], where a judge sentences a defendant to a term of probation rather than a sentence of 'immediate confinement,' the judge for many defendants has the discretion" permitted by § 178E [f]).

Furthermore, it is not necessarily clear that a commitment to DYS constitutes a "sentence" in the conventional sense.  As the definitions cited supra indicate, ordinarily a "sentence" results from a judge imposing a particular penalty on an

offender.  But in the case of juveniles committed to DYS, the Juvenile Court judge generally has no authority to dictate the terms of a juvenile's commitment to DYS, and a commitment to DYS can result in a variety of consequences for the juvenile -- some that look more like confinement, others less so.  See G. L. c. 120, § 6.

What we are left with, then, is a statute whose plain language and structure create a vexing choice.  As just explained, if we consider a judge's sentence of commitment to DYS as a sentence to immediate confinement, we must ignore parts of G. L. c. 119, § 58, and G. L. c. 120, § 6; if, on the other hand, we do not consider a commitment to be a sentence to immediate confinement, our interpretation necessitates ignoring other parts of G. L. c. 119, § 58, and G. L. c. 120, § 6, and disregarding as well the reality that when a judge commits delinquent juveniles and youthful offenders to DYS, the judge has essentially no control over the conditions that DYS imposes. The parties have not directed us to any legislative history, and we have located none, to help resolve this tension between the two alternatives.

However, "[u]nder the rule of lenity, 'if we find that the statute is ambiguous or are unable to ascertain the intent of the Legislature, the defendant is entitled to the benefit of any rational doubt.'"  Commonwealth v. Richardson, 469 Mass. 248,

254 (2014), quoting Commonwealth v. Constantino, 443 Mass. 521, 524 (2005). We have applied the rule of lenity "to sentencing as well as substantive provisions." Richardson, supra at 254, quoting Commonwealth v. Gagnon, 387 Mass. 567, 569 (1982), cert. denied, 464 U.S. 815 (1983). Of particular pertinence here, we also have invoked the rule in interpreting § 178E (f). See Ventura, 465 Mass. at 212.

Independent of the rule of lenity, we have said that interpreting an ambiguous statute against a juvenile would conflict with the statutory command of G. L. c. 119, § 53. See Hanson H., 464 Mass. at 813-814. Section 53 requires a liberal construction of the juvenile justice laws in order to ensure that juveniles who commit offenses are "treated, not as criminals, but as children in need of aid, encouragement, and guidance."[12] Consonant with that command is the principle, woven into the fabric of our juvenile justice system, that a Juvenile Court judge has broad discretion regarding the disposition of a case in order to ensure that the rehabilitative aim of § 53 is realized. See Hanson H., supra at 814, and cases cited. Interpreting an ambiguous provision in a statute to require sex

_____

[12] Section 53 mandates that this liberal construction shall apply to G. L. c. 119, §§ 52-63. Obviously, G. L. c. 6, § 178E (f), does not fall directly within this range of sections. However, this case requires us to interpret § 178E (f) in a way that necessitates an understanding of the dispositional options available under G. L. c. 119, § 58. Therefore, the command of § 53 applies here.

offender registration for a juvenile and to foreclose an individualized determination by a Juvenile Court judge would offend these principles.

These reasons persuade us that it is appropriate to construe the ambiguous language in § 178E (f) at issue to mean that where a Juvenile Court judge commits a juvenile on a delinquency complaint or a youthful offender indictment to DYS as a disposition on a sex offense, that is not a "sentence[] to immediate confinement" within the meaning of the statute.[13]  In this regard, it is important to emphasize that the availability in such cases of an individualized judicial determination under § 178E (f) does not mean every juvenile adjudicated as delinquent will be relieved of the obligation to register as a sex offender.  It means only that in every case involving a delinquent juvenile, the judge is required to conduct an individualized determination in order to decide the issue.[14]  The

---

[13] Because we conclude only that a commitment to DYS does not constitute a sentence of immediate confinement for purposes of § 178E (f), our ruling does not apply to dispositions that do not involve a commitment to DYS.

[14] Quite apart from the rule of lenity and guiding principles of juvenile law that have persuaded us to interpret "sentenced to immediate confinement" in the first sentence of § 178E (f) as we do, the language and structure of the first sentence of § 178E (f) offer direct textual support for this interpretation.  The first sentence begins by identifying the universe of sex offenders that it covers:  convicted adult sex offenders, adjudicated youthful offender sex offenders, and delinquent juvenile sex offenders -- and then narrows this

conclusion of the judge in this case that § 178E (f) did not authorize her to make such a determination was incorrect.[15]

3. GPS monitoring. The juvenile also argues that G. L. c. 265, § 47 (§ 47), does not require youthful offenders to submit to GPS monitoring upon release from custody. For support, he points to this court's opinion in Hanson H., 464 Mass. at 808, which held that § 47 does not impose GPS monitoring as a mandatory condition of probation for delinquent juveniles who have been adjudicated sex offenders. The

_____

universe by defining a single characteristic that they must exhibit -- not being sentenced to immediate confinement -- as a condition precedent to trigger the judge's authority (and obligation) to determine whether any such sex offender should be required to register. When the structure of the first sentence is considered in this way, the Legislature's inclusion of delinquent juvenile sex offenders may be understood as simply a reference to the fact that they are part of the universe of sex offenders to whom the sex offender registration statute, G. L. c. 6, §§ 178C-178P, applies. That this particular group of sex offenders, by definition, may not be subject to immediate confinement simply means that they always fit within the narrowed universe of offenders for whom the sentencing judge will be required to consider individually whether they should be required to register, as opposed to having the registration requirement imposed automatically.

[15] It appears from the judge's revised decision that she contemplated that the juvenile in this case, upon commitment to DYS, would be confined in a secure DYS treatment facility. However, for the reasons discussed in the text, the fact that DYS ultimately may have sent this particular juvenile to a secure facility does not change our conclusion that, for purposes of § 178E (f), a commitment to DYS does not constitute being "sentenced to immediate confinement." The analysis hinges on the lack of clarity in the law about whether DYS commitments writ large can be equated with a judicial sentence of immediate confinement -- not whether, in a particular case, a DYS commitment actually includes a form of immediate confinement.

Commonwealth argues that because the law treats youthful offenders more like adults than like delinquent juveniles, the holding of Hanson H. does not apply here and youthful offenders should be subject to the mandatory GPS monitoring called for in § 47.

Again, we review this question of statutory interpretation de novo. See Ventura, 465 Mass. at 208. We conclude the juvenile's reading of the statute is correct.

a. The holding of the Hanson H. case. In the Hanson H. case, the court observed that neither the plain language of § 47[16] nor its legislative history conclusively resolved whether the Legislature intended to require mandatory GPS monitoring for

---

[16] The relevant portion of G. L. c. 265, § 47, provides:

"Any person who is placed on probation for any offense listed within the definition of 'sex offense', a 'sex offense involving a child' or a 'sexually violent offense', as defined in [G. L. c. 6, § 178C], shall, as a requirement of any term of probation, wear a global positioning system device, or any comparable device, administered by the commissioner of probation, at all times for the length of his probation for any such offense. The commissioner of probation, in addition to any other conditions, shall establish defined geographic exclusion zones including, but not limited to, the areas in and around the victim's residence, place of employment and school and other areas defined to minimize the probationer's contact with children, if applicable. . . . If the commissioner or the probationer's probation officer has probable cause to believe that the probationer has violated this term of his probation, the commissioner or the probationer's probation officer shall arrest the probationer pursuant to [G. L. c. 279, § 3]. Otherwise, the commissioner shall cause a notice of surrender to be issued to such probationer."

juvenile probationers.  Hanson H., 464 Mass. at 810-813.  As a result, the court looked to G. L. c. 119, § 53, which provides that our juvenile justice laws "shall be liberally construed" so that, "as far as practicable," juveniles who commit offenses "shall be treated, not as criminals, but as children in need of aid, encouragement and guidance." See Hanson H. supra at 814. Based on that statutory command and in light of the ambiguity of § 47, we held that mandatory GPS monitoring pursuant to § 47 does not apply to juveniles who have been adjudicated delinquent.  Hanson H., supra at 816.

The court in the Hanson H. case specifically limited its holding "to juveniles placed on probation as a result of being adjudicated delinquent on a complaint." Id. at 808 n.1.  We pointedly did not address whether § 47 applies to juveniles placed on probation after being adjudicated a youthful offender. Id.  That issue arises in this case.

b.  Application of Hanson H. principles.  We see no compelling reason why the principles articulated in the Hanson H. case should not apply equally to youthful offenders, and therefore reach the same conclusion as the Hanson H. case:  the Legislature did not intend to require GPS monitoring on youthful offender probationers in the absence of an individualized determination by the sentencing judge that such a condition would be appropriate.

This conclusion is consonant with the command of § 53 -- that, as far as practicable, we must treat juveniles "not as criminals, but as children in need of aid, encouragement and guidance." Indeed, § 53 includes both youthful offenders and delinquent juveniles within its ambit. See G. L. c. 119, §§ 53, 54, 58. Thus, the force of the command in § 53 is not blunted merely because we are now contemplating youthful offenders, as opposed to delinquent juveniles. See Commonwealth v. Anderson, 461 Mass. 616, 630, cert. denied, 133 S. Ct. 433 (2012) (youthful offenders "not exclude[d] . . . from the dictates of § 53").

Additionally, at the heart of the youthful offender scheme is a "logical continuum" of culpability that spans the gap between delinquent juveniles and adult criminals. Commonwealth v. Connor C., 432 Mass. 635, 645-646 (2000), discussing G. L. c. 119, § 58. As discussed above, when a juvenile is adjudicated as a youthful offender, the judge, at sentencing, can treat the individual more like an adult (a sentence as provided by law), more like a delinquent juvenile (commitment to DYS), or somewhere in between (a combination sentence), G. L. c. 119, § 58, third par., and must conduct a sentencing recommendation hearing that takes into account a host of case-specific factors, G. L. c. 119, § 58, fourth par. This individualized scheme for sentencing youthful offenders is

inconsistent with an interpretation of § 47 that would uniformly mandate GPS monitoring as a condition of probation for all youthful offenders.  Instead, as in Hanson H., a Juvenile Court judge retains discretion to impose such a condition after conducting an individualized determination "that the need for GPS monitoring to protect the safety of the victim and prospective victims over[rides] the damage that wearing such a device may have on the child's rehabilitation."  Hanson H., 464 Mass. at 816.

The Commonwealth presents, in essence, two arguments to the contrary.  We find neither persuasive.

First, the Commonwealth argues that the use of the terms "probationer" and "offender" in § 47 supports its reading of the law because, under G. L. c. 119, § 58, a youthful offender's sentence may include a period of probation supervised by the adult probation department, as opposed to the Juvenile Court probation department, once the youthful offender attains the age of twenty-one.  (Indeed, such a result is contemplated by the combination sentence imposed on the juvenile in this case.)  But this argument has little force where the youthful offender in fact faces no period of adult probation (i.e., when the youthful offender is sentenced only to a commitment to DYS).  See G. L. c. 119, § 58 (c).  Even if a youthful offender does face a period of adult probation, the Commonwealth's argument is

unavailing for the reasons articulated in Hanson H., where we observed that much of § 47 "suggests that the Legislature understood that the probationers subject to mandatory GPS monitoring would be adults," not juveniles. Hanson H., 464 Mass. at 810.

Second, the Commonwealth notes that the Youthful Offender Act, St. 1996, c. 200, was passed in response to societal concerns about violent crimes committed by juveniles and, accordingly, created the youthful offender category of adjudications in which some of the protections and privileges afforded to delinquent juveniles did not apply. See Commonwealth v. Clint C., 430 Mass. 219, 222-223 (1999). The implication of this development, according to the Commonwealth, is that youthful offenders are categorically more threatening to public safety than delinquent juveniles, and therefore the rationale of Hanson H. should not apply to youthful offenders.

The argument fails. Although youthful offenders are not afforded some of the protections provided to delinquent juveniles, nothing in the law has eroded the mandate of § 53 to treat, as far as practicable, all juveniles "not as criminals, but as children in need of aid, encouragement and guidance." Moreover, our conclusion today, as in Hanson H., leaves intact the discretion of Juvenile Court judges to impose GPS monitoring as a condition of probation in appropriate cases for youthful

offenders.  Where the Commonwealth is able to demonstrate that the need for GPS monitoring to protect public safety overrides the damage that wearing such a device is likely to have on the juvenile's rehabilitation, there is nothing to stop a Juvenile Court judge from ordering such a condition.  See Hanson H., 464 Mass. at 816.  We hold today only that the mandatory GPS monitoring in § 47 does not apply to youthful offenders.

Conclusion.  For the foregoing reasons, the Juvenile Court judge's decision of June 5, 2015, is vacated.  The case is remanded for further proceedings consistent with this opinion.

So ordered.