NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13800

COMMONWEALTH  vs.  SONNY S., a juvenile.[1]


Essex.     November 5, 2025. – April 7, 2026.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges,
Dewar, & Wolohojian, JJ.


Imprisonment, Credit for time served.  Practice, Criminal,
    Sentence.  Youthful Offender Act.  Department of Youth
    Services.



Indictments found and returned in the Essex County Division
of the Juvenile Court Department on December 9, 2019.

A motion for jail credit was heard by Kerry A. Ahern, J.

The Supreme Judicial Court granted an application for
direct appellate review.


Lisa M. Lana, Committee for Public Counsel Services, for
the juvenile.
Emily G. Jarmolowicz, Assistant District Attorney, for the
Commonwealth.
Marsha L. Levick, of Pennsylvania, & Katherine E. Burdick,
for Juvenile Law Center, amicus curiae, submitted a brief.

---

[1] Where the juvenile's case below involved both a
delinquency proceeding and a youthful offender proceeding, we
refer to him by pseudonym.

Leon Smith, Kristen Gagalis, Paul Kominers, & Tamara
Wolfson, for Citizens for Juvenile Justice, amicus curiae,
submitted a brief.

BUDD, C.J.  The juvenile was adjudicated as a youthful
offender and received a combination sentence comprising
commitment to the Department of Youth Services (DYS) until
twenty-one years of age, followed by a suspended State prison
sentence.  While on conditional release from his DYS commitment,
the juvenile violated his probation, resulting in the imposition
of the previously suspended prison sentence.  The juvenile seeks
to have the time he spent in a secure DYS facility credited
against the State prison sentence he now serves.  For the
reasons explained in greater detail below, we conclude that such
credit is not available to him.[2]

Background.  In 2021, the juvenile entered guilty pleas as
a youthful offender on charges of involuntary manslaughter and
motor vehicle homicide by reckless operation, stemming from an
incident that occurred in 2019 when he was sixteen years of age.
He received a combination sentence pursuant to G. L. c. 119,
§ 58, third par., on the manslaughter indictment, consisting of
DYS commitment until the age of twenty-one, followed by from

---

[2] We acknowledge the amicus brief submitted by the Juvenile
Law Center and the amicus letter submitted by Citizens for
Juvenile Justice.

five to seven years in State prison suspended for five years pending the successful completion of probation.[3]

In September 2022, after spending eighteen months in a secure DYS facility, the juvenile was released on a grant of conditional liberty.[4]  In July 2024, the juvenile violated the terms of his probation, and as a result, the previously suspended State prison term was thereafter imposed.  The juvenile filed a motion seeking jail credit for, among other things, the 549 days he spent in DYS custody prior to being released on probation because, he argued, he spent that time in confinement.  The motion was denied, and we granted the juvenile's application for direct review of his timely appeal.

Discussion.  We begin with a brief overview of the youthful offender statute.  "[A]s far as practicable, [children brought before the court] shall be treated, not as criminals, but as children in need of aid, encouragement and guidance."  G. L. c. 119, § 53.  However, a juvenile from fourteen to eighteen

---

[3] The maximum penalty provided by law for manslaughter is twenty years in State prison.  See G. L. c. 265, § 13.

[4] A grant of conditional liberty is a written agreement between a juvenile and DYS specifying conditions for his or her release.  See 109 Code Mass. Regs. § 8.03 (2016).  These agreements are designed to "enhance the healthy development of the committed youth and enable the youth to return to and succeed as a valued and contributing member of the community." 109 Code Mass. Regs. § 8.01 (2016).

years of age may be considered a "youthful offender" if he or she

> "is alleged to have committed an offense against a law of the commonwealth [that] . . . if he [or she] were an adult, would be punishable by imprisonment in the state prison, and the person has previously been committed to [DYS], or the offense involves the infliction or threat of serious bodily harm in violation of law or [certain firearms offenses]."

G. L. c. 119, § 54.  In such a case, the sentencing judge has the discretion to sentence the juvenile to one of three types of dispositions:  (1) commitment to DYS until the age of twenty-one; (2) a combination sentence consisting of commitment to DYS until the age of twenty-one together with a suspended adult sentence; or (3) an adult sentence as provided by law.  See G. L. c. 119, § 58.  See also Commonwealth v. Yasir Y., 494 Mass. 432, 438-439 (2024).  Prior to sentencing, the judge must receive a presentence investigation report, and must hold a hearing to consider factors including

> "the nature, circumstances and seriousness of the offense; victim impact statement; a report by a probation officer concerning the history of the youthful offender; the youthful offender's court and delinquency records; the success or lack of success of any past treatment or delinquency dispositions regarding the youthful offender; the nature of services available through the juvenile justice system; the youthful offender's age and maturity; and the likelihood of avoiding future criminal conduct."

G. L. c. 119, § 58, fourth par.

Here, the juvenile received neither the most lenient nor the most severe disposition possible -- instead, as mentioned

supra, he received a combination sentence: DYS custody until the age of twenty-one, followed by from five to seven years in State prison suspended for five years pending the successful completion of probation. He spent just over eighteen months in DYS custody before being released on probation. Not quite two years later, the juvenile violated his probation and was sentenced to serve the suspended State prison portion of his sentence. The juvenile contends that the time he was confined while in DYS custody must be credited toward the adult portion of the sentence he now serves. In the alternative, he argues that the sentencing judge had the discretion to award that credit. This view misapprehends the purpose of jail credit.

By statute, a defendant who spends time in custody prior to the disposition of his or her case is entitled to credit for the number of days held toward the sentence he or she later receives. See Commonwealth v. Milton, 427 Mass. 18, 23-24 (1998); G. L. c. 279, § 33A; G. L. c. 127, § 129B.[5] Further,

_____

[5] General Laws c. 279, § 33A, states:

"The court on imposing a sentence of commitment to a correctional institution of the commonwealth, a house of correction, or a jail, shall order that the prisoner be deemed to have served a portion of said sentence, such portion to be the number of days spent by the prisoner in confinement prior to such sentence awaiting and during trial."

General Laws c. 127, § 129B, states:

"[w]here there is no controlling statute, we have looked to considerations of fairness to determine whether a defendant is owed credit toward a conviction" (quotation and citation omitted).  Commonwealth v. Caliz, 486 Mass. 888, 891 (2021).  See, e.g., Chalifoux v. Commissioner of Correction, 375 Mass. 424, 429 (1978) (credit for time served required where Commonwealth did not promptly advise prisoner serving out-of-State sentence intended to run concurrently with Massachusetts State sentence of Commonwealth's refusal to receive him on transfer); Commonwealth v. Grant, 366 Mass. 272, 275-276 (1974) (credit for time served required, on theory of constructive State custody, where Commonwealth deferred to Federal custody arrangement); Lewis v. Commonwealth, 329 Mass. 445, 451 (1952) (credit required for time served on erroneous sentence against new, lawful sentence).  As a youthful offender who received a combination sentence, the juvenile is not entitled to jail credit either by statute or principles of fairness pursuant to

---

"The sentence of any prisoner in any correctional institution of the commonwealth or in any house of correction or jail, who was held in custody awaiting trial shall be reduced by the number of days spent by him in confinement prior to such sentence and while awaiting trial, unless the court in imposing such sentence had already deducted therefrom the time during which such prisoner had been confined while awaiting trial."

the common law for the portion of that sentence spent in DYS custody.

First, both G. L. c. 279, § 33A, and G. L. c. 127, § 129B, provide that the sentence one receives is to be reduced by the number of "days spent . . . in confinement prior to [receiving] such sentence."  Considering the plain meaning of that language, the jail credit statutes apply to time spent in custody prior to trial (or the disposition of one's case), not to the time spent serving the imposed sentence itself.  See Commissioner of Correction v. Superior Court Dep't of the Trial Court for the County of Worcester, 446 Mass. 123, 124 (2006) ("Statutory language should be given effect consistent with its plain meaning.  Where, as here, that language is clear and unambiguous, it is conclusive as to the intent of the Legislature").  Because the time spent in DYS custody pursuant to G. L. c. 119, § 58, third par., was part of the juvenile's sentence, it was not "confinement prior to" the sentence.  Accordingly, the jail credit statutes do not apply.  The sentencing judge gave the juvenile 562 days of credit toward the State prison sentence he now serves to account for the time he was in adult custody prior to pleading guilty as a youthful offender and time that he had already been held on the probation violation.  He is entitled to no additional statutory jail credit.

Nor is the juvenile entitled to such credit on equitable grounds. The purpose of providing equitable credit for time served in custody is to prevent a prisoner from serving "dead time," that is, "time spent in confinement for which no day-to-day credit is given against any sentence." Caliz, 486 Mass. at 891, quoting Milton, 427 Mass. at 21 n.4. The time the juvenile spent in DYS custody was not, as he argues, time "in confinement that count[s] toward no sentence," making it dead time; instead, as discussed supra, that time was part of the sentence imposed.

The purpose of a combination sentence is to motivate a juvenile to reform by providing the "opportunity to discharge his or her sentence in the juvenile system and avoid adult incarceration" altogether. Commonwealth v. Lindberg, 98 Mass. App. Ct. 339, 342 (2020).[6] Crediting time spent in DYS custody toward a potential subsequent State prison sentence directly conflicts with this incentive structure, and instead would improperly create an opportunity for those who serve time in DYS custody to "bank" that time against the future consequences of a probation violation. See Caliz, 486 Mass. at 891-892 ("mandatory banked time is considered akin to authorizing a line

---

[6] Indeed, had the juvenile abided by the terms of his probation after being released, the time spent in DYS custody would have been the entirety of his sentence.

of credit for future crimes" [quotations and citation omitted]). This can hardly be considered equitable.[7]

Finally, the juvenile argues that even if the judge imposing the adult portion of his sentence was not required to credit him for time spent in secure DYS custody, she had discretion to do so. We disagree. By statute, a judge revoking a defendant's probation and imposing the suspended balance of a sentence has no discretion to alter that sentence. See G. L. c. 279, § 3 ("If such suspension is revoked, the sentence shall be in full force and effect"); Commonwealth v. Holmgren, 421 Mass. 224, 228 (1995) (contrasting mandatory scheme of G. L. c. 279, § 3, with discretionary scheme in Federal practice). Thus, absent any legal entitlement to credit, any discretionary award of credit would functionally alter the suspended portion of the sentence in contravention of G. L. c. 279, § 3. There is

---

[7] The juvenile argues that he is entitled to credit because his time in DYS custody was spent in a locked facility. We note that when any juvenile is committed to DYS custody, it is department personnel, not the sentencing judge, who determines the appropriate level of DYS supervision based on the juvenile's history and treatment needs. See Commonwealth v. Samuel S., 476 Mass. 497, 505-506 (2017), citing G. L. c. 120, § 6 ("commitment to DYS can result in a variety of consequences for the juvenile -- some that look more like confinement, others less so"). Regardless of placement, the time the juvenile spent in DYS custody was a portion of the youthful offender combination sentence he received.

nothing to suggest that sentencing under the youthful offender statute is exempt from this statute.[8]

Conclusion. For the reasons stated above, we affirm the Juvenile Court's order denying the juvenile's motion for jail credit.

So ordered.

---

[8] The juvenile also argues that equal protection principles compel credit for time served in DYS custody. He contends both that denying credit treats him differently from an adult who served time in pretrial detention and that the denial of credit imposes a disparate impact on nonwhite juveniles.

This issue was not raised in the juvenile's original motion. Nevertheless, as we have explained, time in DYS custody under a youthful offender combination sentence is not the same as adult pretrial detention. Thus, to the extent that the juvenile's equal protection claim equates the two, it must fail. See Commonwealth v. Terrell, 486 Mass. 596, 601-602 (2021).

As to his race-based disparate impact claim, the juvenile wrongly asserts that strict scrutiny applies in these circumstances. Strict scrutiny applies where a law discriminates on the basis of a protected class. See Commonwealth v. Long, 485 Mass. 711, 729-730 (2020). Indeed, as explained supra, time spent in DYS custody under a combination sentence cannot be credited toward a State prison sentence for any juvenile, regardless of that person's race. Moreover, the defendant does not advance any argument, let alone a record establishing, that the racial impacts he describes "can be traced to a discriminatory purpose" (citation omitted). Commonwealth v. Shepherd, 493 Mass. 512, 525 (2024) (standard applicable to claims that neutral law has racially disparate impact). Accordingly, that equal protection claim, too, must fail.